# Commonwealth *v.* Werntz, Appellant.

161  591
188  167
161  591
191  378
161  591
201  455
161      591
f 28 SC 206

*Assignments of error—Evidence—Practice, Supreme Court.*

Assignments of error to the admission or rejection of testimony must set forth so much of the preceding or the accompanying evidence as is necessary to a proper understanding of the offer and the ruling of the court upon it, and, if testimony objected to be admitted, so much of it as may suffice to show why it was injurious to the party excepting. The neglect of these requirements is not cured by putting the necessary matter in the bill of exceptions or elsewhere in the record or the paper-book. They belong in the assignments, and must be set out there in full, whether they appear elsewhere or not.

*Evidence—Declarations—Res gestæ.*

If declarations are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself, and so soon thereaf-

ter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the res gestæ.

*Criminal law—Murder—Declarations—Evidence.*

On the trial of an indictment for murder by stabbing, the defence was that the act was committed by a colored servant of defendant. A police surgeon testified that while he was at the door outside the shed in which the fight took place, he heard a voice inside, which he recognized as that of Gallagher, the injured man, saying " the coon did it; " that when Gallagher was brought out of the shed he repeated the same thing ; and that witness followed him to a barber shop where he was carried, on the other side of the street, and across a lot, and there dressed his wound. Witness was then asked whether Gallagher while lying on the floor of the shop had made the same or a similar declaration. *Held,* that the question should have been permitted.

The declarations were by the party best informed and most interested, and were made at a time and place, to a person, and under circumstances, which effectually exclude the presumption that they were the result of premeditation and design.

*Criminal law—Murder—Evidence.*

Where the testimony of the commonwealth's witnesses is to the effect that the prisoner was the only person in the room who had a knife, it is error to exclude an offer by defendant to show that another person received a stab in the room at that time, but while defendant was not there.

*Credibility of witness—Inconsistent declarations.*

Where a witness for the commonwealth testifies that he saw the prisoner stab the deceased, it is error to exclude an offer to show that immediately after the occurrence, and before the witness had time for premeditation or design, he had made statements entirely inconsistent with his testimony at the trial.

*Criminal law—Murder—Charge of court.*

In the above case it was error to charge as follows : " Whatever relevancy they (the declarations as to who did the stabbing) may have as affecting the general credibility of some of the witnesses, yet they would not be of potent force in the case if you should expressly find from the other evidence affirmatively that no colored man was in the room at the time or could have inflicted the wound."

It is improper for the court to say in refusing to discharge the jury in a murder trial that to do so " would do a wrong, and defeat the ends of justice." Such an instruction is likely to be taken by the jury as a strong, if not a binding direction to them that it is their duty to convict the prisoner.

Argued April 4, 1894. Appeal, No. 72, July T., 1893, by defendant, William B. Werntz, from judgment of O. & T. Phila. Co., Feb. T., 1893, No. 96, on verdict of guilty. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Reversed.

Indictment for murder.   Before GORDON, J.

At the trial it appeared that, on Jan. 4, 1893, Thomas P. Gallagher was killed in a fight that occurred in a room used for a Republican primary election poll.   Three witnesses for the commonwealth, Peter Carey and the Farrells, testified positively that they saw the prisoner stab Gallagher.   Defendant denied having committed the act, and made various offers to prove declarations of the commonwealth's witnesses inconsistent with the testimony which they gave on the stand.   These offers are indicated in the assignments of error.

The court charged in part as follows :

" A number of witnesses were called to testify to hearing the declaration made at or soon after the time of the stabbing, by both of the Farrells, ' The coon did it,' or ' The nigger did it,' and also as to Farrell pursuing Rothermel in Donnelly's saloon. It is not necessary for me to narrate this testimony in detail. Much of it was admitted to contradict Carey and the two Farrells, who denied that they had ever used such language, averring on the contrary that they had denied that any negro did it, but had said that Dr. Werntz did it.   The only relevancy of this part of this defendant's case is as affecting the credibility of the three witnesses referred to and not as substantive proof.

" [Upon the subject of these alleged declarations, let me say that they are important or unimportant, accordingly as you shall find the main fact to which they refer.   That is to say, if you shall find from the evidence that the wound was not inflicted upon Gallagher by a colored man or could not have been, then the erroneous declaration or assertion or belief by anybody that it was so inflicted becomes of no effect upon that main question.   Whatever relevancy they may have as affecting the general credibility of some of the witnesses, yet they would not be of potent force in the case if you should expressly find from the other evidence in the case affirmatively that no colored man was in the room at the time or could have inflicted the wound.   In other words, the judgment, or opinion, or statement by any one that a ' nigger ' did the deed is of no avail if you find from the other evidence that a negro did not do the deed or could not have done it."] [10]

In answer to an urgent request by the jury to be discharged the court said :

" I received your communication, in which you state that you have been as yet unable to unite upon a verdict, and ask that I should discharge you from further consideration of the case. I have sent for you to explain why I cannot do that. The bill charges the offence of murder, and it therefore charges that crime to which in one of its degrees the penalty attached is death. The defendant, when he was put upon trial on that bill of indictment, was from that moment in jeopardy of life and limb, and under our constitution he cannot twice be put in that position for the same offence. You are the first and last jury that can make this inquiry. [In this respect the offence of murder is exceptional, for this rule does not apply to other crimes, and therefore it is obligatory upon the jury to agree upon a verdict in this case. I have no right to discharge you. I have no right to put this case in such a position that the defendant cannot again be tried for this offence. I have no such authority that I know of. I have explained to you at this length why I will not discharge you. I do not mean to say that I have not the physical power to discharge you, but I know if I did I would do a wrong and defeat the ends of justice.] [11] As I have said, this is the only kind of criminal prosecution to which this rule applies. For all other crimes there may be repeated retrials, but for this one a verdict must be reached."

Verdict of guilty of second degree and judgment of sentence thereon.

*Errors assigned* were that the court erred in permitting the commonwealth to offer testimony in chief (1) to prove that a certain colored man, a servant of Dr. Werntz, when urged to go in the place where the fight was going on, was stopped by the witness and prevented from going inside, and was actually outside of the place where the fight occurred and the murder took place; (2) to show by one of the witnesses a conversation that took place between the said colored man and another witness on the part of the commonwealth, defendant not being present or within hearing of said conversation; (3) to show that no colored man was inside the shed where the fight took place and the murder was committed; (4) in refusing to permit defendant to prove that one Edward J. Gleason, a police officer, who went in to quell the disturbance that resulted in

the murder, received a stab at that time and place, not inflicted by defendant; (5) in permitting the commonwealth to cross-examine the said Edward J. Gleason, the police officer, upon the alleged conversation that took place between the said police officer and the colored man, a servant of defendant, not in the presence of defendant; (6) in not permitting Gottlieb Franks, a witness for defendant, to testify as to a statement made by Michael Farrell, one of the chief witnesses of the commonwealth, entirely inconsistent with the statement given at the trial; (7) in refusing to permit defendant to show by one Charles McBride and other witnesses the declarations of Gallagher, the murdered man, immediately after the occurrence, said declarations being favorable to the prisoner; (8) in permitting the commonwealth to call one Thomas Scott to prove the conversation alleged to have taken place between him and one of the witnesses for defendant, defendant not being present; (9) in permitting the commonwealth to prove by one Charles H. Myers that a certain witness for the defence, Samuel Baker, had made certain statements to him as alleged upon the trial of the case; (10, 11) instructions as above; quoting instructions but not bills of exceptions or evidence.

*Samuel E. Cavin* and *Charles F. Warwick, Geo. F. Munce,* with them, for appellant, cited.—Taylor Ev., pp. 1, 233; Whart. Cr. Ev., 9th ed. 262, 482, 492; Snyder v. Com., 85 Pa. 519; Kidder v. Lovell, 14 Pa. 214; Hadley v. Carter, 8 N. H. 40; O'Mara v. Com., 75 Pa. 429; Watson v. Com., 95 Pa. 425; 1 Greenl. Ev. § 449; Elkins v. McKean, 79 Pa. 494; Thompkins v. Saltmarsh, 14 S. & R. 275; Deardorf v. Hildebrand, 2 Rawle, 226; Cattison v. Cattison, 22 Pa. 275.

*George S. Graham,* for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 21, 1894:

The assignments of error in this case are in entire disregard of our rules, which are plain, specific and mandatory. The assignments are the pleadings in this court, and are the only part of the case that remains of record here after the remittitur to the court below. They should therefore be self-explanatory and self-sustaining, giving in each assignment separately the offer with so much of the preceding or accompanying evidence

as is necessary to the proper understanding of the offer, the ruling of the court upon it, and if testimony objected to be admitted so much of it as may suffice to show why it was injurious to the party excepting. The neglect of these requirements is not cured by putting the necessary matter in the bill of exceptions or elsewhere in the record or the paper-book. It belongs here whether it appear again elsewhere or not. It ought not to be necessary for us to repeat this so often as we are called upon to do. The court is always reluctant to deprive a party of a hearing in a serious criminal case, upon technical grounds, but counsel who presume on such reluctance to disregard the rules should understand that they do so at great risk to their clients. In the present case only the gravity of the crime charged induces us to forego the enforcement of the rule that assignments not properly made will be disregarded.

The case is peculiar in the respect that it turns almost entirely on the credibility of the witnesses. On the part of the commonwealth the averment is of a killing by the prisoner in plain sight of the witnesses, and their testimony as to it is direct and positive. Nothing is left to inference or to deductions from circumstantial evidence. On the other hand the denial is equally direct, explicit and emphatic, and the defence charges rank perjury, and supports the charge by direct and positive testimony as to declarations made by the commonwealth's witnesses at the time of the occurrence, absolutely irreconcilable with their testimony at the trial.

In this position of the case the defence offered to prove declarations made by the deceased as to who did the stabbing. The evidence was excluded as too remote in time or place, or both, to form part of the res gestæ. These declarations were by the person best qualified to know the facts, and with the least inducement to distort them in any way. It is manifest that unless too remote they were not only admissible but were of the very highest importance in the case. No fixed measure of time or distance from the main occurrence can be established as a rule to determine what shall be part of the res gestæ. Each case must necessarily depend on its own circumstances to determine whether the facts offered are really part of the same continuous transaction. In the notable case of Hunter v. State, 40 N. J. Law, 495, 538, BEASLEY, C. J., adopts the definition

of Wharton, Evidence, sec. 259, that "the res gestæ are the circumstances which are the undesigned incidents of the litigated act, which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. . . . Their sole distinguishing feature is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for, or emanations of such act, and are not produced by the calculated policy of the actors." And with regard to declarations, the rule is well stated in 21 Am. & Eng. Ency. of Law, 102, that if they "are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thought created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the res gestæ."

Tried by either of these tests the evidence offered was admissible. The most specific offer was in the case of Dr. Birney. This witness was the police surgeon of the district, was at the polls and saw part at least of the occurrence. He testified that while he was at the door outside of the shed in which the fight took place, he heard a voice inside, which he recognized as that of Gallagher, the injured man, saying "the coon did it;" that when Gallagher was brought out of the shed he repeated the same thing; and that witness followed him to the barber shop where he was carried, on the other side of the street and across a lot, and there dressed his wound. Witness was then asked whether Gallagher while lying on the floor of the shop had made the same or a similar declaration. This was excluded as too remote. The interval of time from the stabbing and the distance of the barber shop from the shed, do not appear with exactness, nor are they material, for it is apparent that they were not great, and that the continuity of the events was not broken. The declarations were by the party best informed and most interested, and were made at a time and place, to a person, and under circumstances, which effectually exclude the presumption that they were the result of premeditation and design. If such declarations were in fact made by Gallagher, they were the most material evidence in the case, and should have been admitted.

The defence renewed the same offer in connection with other witnesses. It was error to exclude it.

There were some other errors of less importance which as the case must go back for retrial should be noticed.

The offer to prove that police officer Gleason received a stab or had his clothes cut in the room at that time but while the defendant was not there, should have been admitted. The testimony of the commonwealth's witnesses was to the effect that the prisoner was the only person there who had a knife, and the testimony offered tended to show the contrary.

The testimony of Franks as to declarations by Michael Farrell when he came out of the shed should have been admitted. Farrell was one of the three witnesses for the commonwealth on whose veracity the whole case rested. The offer was to show that immediately after the occurrence, before he had time for premeditation or design, he had made statements entirely inconsistent with his testimony at the trial. The offer tended directly to impeach his credibility, and therefore was not only admissible but important.

The language of the charge quoted in the tenth assignment of error, was not happily chosen. The expression, " whatever relevancy they (the declarations as to who did the stabbing) may have as affecting the general credibility of some of the witnesses, yet they would not be of potent force in the case if you should expressly find from the other evidence affirmatively that no colored man was in the room at the time or could have inflicted the wound," tended to divert the minds of the jury from the weight of the declarations on the credibility of the witnesses for the commonwealth, which was the pinch of the case. As already said there was nothing left to inference or circumstantial evidence. If the commonwealth's witnesses were to be believed the prisoner's guilt was directly and conclusively proved. But if it were shown that at the time of the occurrence they had made declarations which required the jury to disbelieve or even to seriously doubt their testimony at the trial, then there was no case at all against the prisoner. The influence of the alleged declarations on the credibility of the witnesses was their principal importance.

So also the language in the eleventh assignment, in refusing to discharge the jury, that to do so, " would do a wrong and

defeat the ends of justice," while proper enough to the legal understanding, was likely to be taken by the jury as a strong if not binding direction to them that it was their duty to convict the prisoner.

Judgment reversed and venire de novo awarded.