# Commonwealth *v.* Stallone, Appellant.

*Criminal law—Murder—Improper remarks of judge—Treatment of counsel—Fair and impartial trial—Constitutional law.*

1. The judge in the course of a murder trial should treat counsel with proper courtesy and avoid every appearance of prejudice which might incline to influence the jury, otherwise defendant is deprived of a fair and impartial trial to which he is constitutionally entitled.

2. A conviction of murder will be reversed where the judge after discussing a ruling with counsel for the prisoner says: "I have a right to rule on it and I have ruled on it. You have no right to lecture the court and I want you to cut it out. I have taken all I am going to take from you."

*Criminal law—Murder—Evidence—Dying declarations.*

3. Dying declarations are admissible only in a prosecution for the murder of the person who made such declarations.

4. Where a person mortally wounds two persons in the same affray, dying declarations of one of such persons are not admissible on a trial of the defendant for the murder of the other. Com. v. Brown, 73 Pa. 321, distinguished.

*Criminal law—Murder—Evidence—Declarations as res gestæ.*

5. Where, on a trial for murder, it appears that the prisoner mortally wounded a second person in the same affray, declarations of such second person to the effect that the prisoner was the guilty person, are admissible as res gestæ, where it appears that they were made to policemen between fifteen minutes and half an hour after the shooting, and while the declarant was lying at the scene of the crime and while he was being conveyed to a hospital.

*Criminal law—Murder—Trial—Experiments or demonstrations in presence of jury.*

6. A wide discretion is vested in the judge at a murder trial in the conduct of the trial, including the making of experiments or demonstrations in the presence of the jury; but it is the discretion of the court which must be exercised and not the discretion of the jury.

It is improper for the judge to submit to the jury whether a demonstration or experiment shall be made, and, upon their assent, to permit in open court, over defendant's objection, the shooting of bullets to test the correctness of a theory propounded by the Commonwealth.

Argued May 12, 1924.   Appeal, No. 347, Jan. T., 1924, by defendant, from judgment of O. & T. Lackawanna Co., Jan. T., 1923, No. 18, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Pasquale Stallone, alias Patsy Stallone.   Before MOSCHZISKER, C. J., FRAZ)ER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Reversed.

Indictment for murder.   Before MAXEY, J.

The opinion of the Supreme Court states the facts.

Verdict, guilty of murder of first degree, on which judgment of sentence was passed.

*Errors assigned* were various rulings and comments by the trial judge, shown by the opinion of the Supreme Court, quoting record.

*Clarence Balentine* and *David J. Reedy,* for appellant. —Dying declarations of Lettieri were inadmissible: Brown v. Com., 73 Pa. 321; Com. v. Mika, 171 Pa. 273; Com. v. Spahr, 211 Pa. 542; Kane v. Com., 109 Pa. 541; Com. v. Van Horn, 188 Pa. 143; Com. v. Brown, 264 Pa. 85.

The rights and powers of the court in the conduct and supervision of a trial, were exceeded and abused to such an extent as to require the reversal of this judgment: Com. v. Myma, 278 Pa. 505.

*Harold A. Scragg,* District Attorney, with him *Robert P. Silverstein,* Assistant District Attorney, for appellee. —The dying declarations were admissible: Brown v. Com., 73 Pa. 321.

Res gestæ declarations of Lettieri were admissible.

The physical demonstrations were proper: Com. v. Wilson, 44 Pa. Superior Ct. 183; Com. v. Fry, 198 Pa. 379.

OPINION BY MR. JUSTICE FRAZER, July 8, 1924:

Appellant was indicted for the murder, on November 7, 1922, of Laurenza Semenza, and convicted of murder of the first degree. The trial consumed seven days of the court's time, and we have before us a record of 900 pages. An examination of the proceedings discloses errors which require us to send the case back for a new trial.

Defendant claims, among other things, that a fair and impartial trial was not accorded him because of the prejudicial attitude and remarks by the court concerning defendant's counsel. During the cross-examination of a witness for the Commonwealth, by defendant's counsel, a discussion arose between the trial judge and the attorney concerning the right of the latter to ask certain questions, in the course of which the court said: "You know that is not proper examination at this stage of the case and the objection is sustained." Counsel protested, claiming the remark of the court to be a reflection on him, and, after further discussion, the court stated: "I have a right to rule on it and I have ruled on it. You have no right to lecture the court and I want you to cut it out. I have taken all I am going to take from you." This language, however it might have been provoked by the attitude of counsel, was not a judicial utterance of the character one would expect to hear from the bench. The record indicates that during the course of the trial there was quite a display of feeling between the trial judge and counsel for defendant. Whether court or counsel was responsible for the unfortunate situation cannot be determined from the printed record. Regardless of who was at fault, any display of partiality or prejudice on the part of the trial judge for or against a party or his attorney must necessarily tend to influence the jury. The trial judge is the person to whom the jurors look for guidance and in whom they expect and have a right to find an impartial attitude. Any indication that the judge condemns the language or conduct of one of the parties or his counsel

is usually reflected in the jury box.   Our Constitution gives to any one, charged with violation of the law, the right to be heard by himself and counsel.   While attorneys are expected to maintain a respectful attitude toward the court, the latter should be equally careful to treat counsel with proper courtesy and avoid every appearance of prejudice which might incline to influence the jury.   In this case we feel the trial judge went beyond the discretion vested in him in the conduct of the trial and by his manner and language possibly deprived defendant of the fair and impartial trial to which he is constitutionally entitled.

Appellant also assigns for error the admission of dying declarations of Ralph Lettieri who was shot by defendant at the time Semenza was killed.   This assignment raises the question whether the dying declarations of one of two persons, mortally injured in the same affray, are admissible in evidence in a trial for the murder of the other.   While there are decisions to the contrary, the general rule is that dying declarations are admissible only in a prosecution for the murder of the person who made such declarations: 30 C. J. 261, section 502.   The Commonwealth argues that Brown v. Com., 73 Pa. 321, is authority for a different rule in Pennsylvania; this construction of that case is based on an inference drawn from what was not determined rather than from what was there decided.   The opinion refers to two cases in other jurisdictions involving the murder of two or more persons by the same draft of poison, and then says (page 329) : "Upon the authority of these cases the learned judge admitted the dying declarations of the wife, upon trial of the defendant for the murder of her husband. In this case there was error, for the husband was found dead on Monday morning, 26th of February, 1872, three hundred yards from his dwelling, and his wife was discovered on the same morning lying across her bed in the house in an insensible condition and with her face and head terribly beaten and disfigured.   Kraemer and his

wife were both advanced in years and there was no doubt that robbery of gold and silver which was known to be in the house led to their murder, but we do not see any facts that would bring these dying declarations of Mrs. Kraemer within those two authorities, supposing them to be good law."

We find nothing in the above case to sustain the view that the conclusion reached would have been otherwise under facts similar to those presented here. In fact there is no valid distinction between the facts of the two cases. In both, the injuries on two or more persons were inflicted by defendant in commission of the same crime. Without entering into discussion of the reasons for the rule, we are satisfied to hold to the doctrine of the weight of the decisions, as stated in Railing v. Com., 110 Pa. 100, 108, viz: "The general rule is that dying declarations are admissible only when the death of the declarant is the subject of the charge, and the circumstances of the death are the subject of the dying declarations."

It is further claimed the trial judge erred in admitting in evidence declarations made by Ralph Lettieri to witnesses shortly after the shooting to the effect that defendant was the guilty person. Although the question of time between the occurrence and the declarations is an important one it is not conclusive. Under particular circumstances the res gestæ may extend over a considerable period of time and the criterion is whether the declarations are made under such circumstances as will raise a reasonable presumption that they were spontaneous utterances created by the transaction itself and so soon thereafter as to exclude the presumption of premeditation and design. "No fixed measure of time or distance from the main occurrence can be established as a rule to determine what shall be part of the res gestæ. Each case must necessarily depend on its own circumstances to determine whether the facts offered are really part of the same continuous transaction. In Com. v. Werntz, 161 Pa. 591, 596, following Hunter v. State, 40 N. J.

Law 495, 538, we adopted the definition of Wharton on Evidence, sec. 259, that "the res gestæ are the circumstances which are the undesigned incidents of the litigated act, which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable...... Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for, or emanations of, such act, and are not produced by the calculated policy of the actors."

The exact period of time which elapsed in this case between the shooting and the making of the declarations is not clearly fixed but was between fifteen minutes and half an hour. The first declaration was made to a police officer, who was among the first to arrive at the scene of the crime and who discovered Lettieri lying on the rear porch of the house. The second declaration to the same effect was made to another officer while Lettieri was being conveyed to a hospital eight blocks distant. Both declarations were to the effect that defendant fired the fatal shot. Under these circumstances the declarations were admissible as the spontaneous utterances of the injured man springing out of the transaction and so soon thereafter as to exclude the presumption that they were the result of premeditation and design within the rule laid down by this court in Com. v. Werntz, supra; Smith v. Stoner, 243 Pa. 57, and Com. v. Puntario, 271 Pa. 501.

During the course of the trial an expert witness testified that bullets fired from a gun, dirty or rusted inside the barrel, would show definite marks, and stated he could demonstrate the fact to the jury by firing a rusty bullet and a clean bullet into absorbent cotton. The court submitted to the jury whether they desired a demonstration. Upon receiving an affirmative answer by the jurors raising their right hands, the demonstration was permitted to be made in the court room over defendant's

objection.  A wide discretion must necessarily be vested in the presiding judge in the conduct of a trial, including the making of experiments or demonstrations in the presence of the jury.  It is the discretion of the court which must be exercised, however, and not the discretion of the jury.  Regardless of the effect of the demonstration, the method adopted by the court in permitting it was highly improper.

Numerous other objections to rulings were raised in the court below, but they are matters that will probably not arise on a retrial and need not now be considered.

The judgment is reversed and a new trial granted.