## Hansky *v.* Jones & Laughlin Steel Corporation, Appellant.

Argued April 24, 1942.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*William A. Challener, Jr.,* with him *Frank McC. Painter* and *William A. Challener,* for appellant.

*W. J. Connelly,* with him *Gregory Zatkovich,* for appellee.

OPINION BY KENWORTHEY, J., July 23, 1942:

Frank Hansky died of peritonitis following an operation for a rupture or perforation of the bowel. The question is whether the rupture was caused by an accident in the course of his employment. The board found that it was. The court affirmed; defendant appealed.

On November 22, 1938, Hansky reported for work at 11:00 P.M. He was apparently in excellent health He worked steadily until about 1:15 A.M. when the billet foreman, Dansbach, saw him walking away from the job toward the locker-room and stopped him to inquire, "Where are you going?" Hansky replied, "you better get somebody else in my place, I am sick." They thereupon walked together to Hansky's regular foreman, Finney, who was in another part of the building about a square and a half away. When they reached Finney two or three minutes later, Hansky, according to Dansbach, told him (Finney) "he thinks he got

hit with a hook." According to Finney, Hansky said, "I think I hit myself with a wrench when I first started to work on the charging skids." The "wrench" or "hook" was a tool Hansky was using to turn billets. He was sent to the employer's emergency hospital, arriving at about 1:50 A.M. Immediately on arriving, according to the nurse, "He told me he was hit with a wrench while turning over a 4 in. billet." He made a similar statement to a physician at about 2 A.M. And at about 3 A.M., when he reached home, he told his wife. "that he was hit with a wrench." Finney testified, ".... he showed me where he was hurt, around the stomach, this way (indicating)." At the hospital he was given emergency treatment for a right inguinal hernia and sent home, although, according to the physician who treated him, he was in considerable pain.

When Hansky reached home, he collapsed. He was taken to the hospital several hours later, at which time the operation was performed. According to the operation record, the ileum was exposed through an abdominal incision and a small opening about a quarter of an inch in diameter was discovered in it (the bowel). "The edges of the tear were ragged showing the perforation coming from within out, as is always the case in these ruptures." Physicians called by claimant testified that, in their opinion, assuming Hansky was struck in the abdomen, the blow was the cause of the rupture of the bowel.

Since no eyewitness described an accident, the question is whether the above-mentioned statements by Hansky were admissible as part of the *res gestae*.

Although, according to Finney's version, Hansky's statement that he was struck "when I first started to work on the charging skids" would fix the time of the accident between 11:45 and 12:00, one of the physicians called by claimant testified that pain develops immediately after a bowel rupture and it would have been

impossible for Hansky to have done any work after the rupture occurred. From this evidence the compensation authorities concluded the accident occurred immediately before Hansky stopped work, which would have fixed the time at approximately 1:15 A.M. On that assumption the statement to Finney, who was the first person in authority[1] Hansky saw, was made within two or three minutes thereafter and the statement to the nurse within about thirty-five minutes. If these statements were admissible, they were sufficient to sustain the award and we need not consider the admissibility of the later statements to the physician and the wife.

As pointed out by the Supreme Court in *Com. v. Stallone,* 281 Pa. 41, 45, 126 A. 56, "Although the question of time between the occurrence and the declarations is an important one it is not conclusive. Under particular circumstances the res gestae may extend over a considerable period of time and the criterion is whether the declarations are made under such circumstances as will raise a reasonable presumption that they were spontaneous utterances created by the transaction itself and so soon thereafter as to exclude the presumption of premeditation and design." Each case must depend on its own circumstances. We are satisfied that the statements in the present case meet the required test. Hansky was suffering excruciating pain throughout. He made the first statement to the first person in authority encountered within two or three minutes after the occurrence, and he repeated it in substantially the same form thereafter. See *Broad Street Trust Co. v. Heyl Brothers et al.,* 128 Pa. Superior Ct. 65, 70, 193 A. 397, and cases there cited.

Judgment affirmed.

---

[1] This is not an accurate statement for general purposes because Hansky was actually working, at the time, for Dansbach. But it is correct for our purposes because Finney was Hansky's regular foreman. He was merely loaned temporarily to Dansbach.