## Haas, Appellant, v. Kasnot.

Argued October 8, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused November 28, 1952.

*C. J. Tannehill,* with him *Harry V. Bair,* for appellants.

*James J. Burns, Jr.,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 10, 1952:

The introduction of legally inadmissible testimony at the trial of these cases necessitates a reversal of the judgments entered in favor of the defendant.

On a May evening in 1947 Anthony Cihal, Jr. was driving a Chevrolet car, wherein Raymond N. Haas and Edward Reiter were passengers, in a westerly direction on the right-hand side of West Carson Street in Pittsburgh between the northerly street-car track and the curbstone. Andrew Kasnot, who was driving a De-Soto car in an easterly direction on that street straddling the southerly rail of the southerly street-car track, came suddenly over to the northerly side of the street and head-on into the Cihal car. Haas, who was injured by the collision, brought suit for damages against Kasnot; another suit against Kasnot was instituted by Cihal, Jr., who also was injured, and Anthony J. Cihal, the owner of the car which his son had been driving. The two actions were tried together and resulted in verdicts for the defendant.

Plaintiffs made out a prima facie case by establishing that defendant came over on his wrong side of the street and into their car. Defendant, supported by other witnesses, testified that one Louis Mike, who was driving a car on the northerly side of the street ahead of the Cihal car, pulled out to his left in order to pass a truck ahead of him, and, in so doing, either swung too far over, or skidded, into the southerly side of the street, striking defendant's car in the left rear, the impact causing it to swerve across the street and into collision with the car of plaintiffs; defendant contended, therefore, that the accident was not his fault. Plaintiffs testified that they saw no such third car alleged by defendant to have been the real cause of the accident. The principal issue at the trial, therefore, was whether three or only two cars were involved in the occurrence; a subsidiary question was raised in regard to the condition of the weather, plaintiffs contending that it was clear and the street was dry, whereas defendant claimed that it was drizzling and the roadway was wet.

Instead of producing Louis Mike as a witness defendant offered in evidence an alleged declaration made by Mike shortly after the happening of the accident. Defendant testified that two or three minutes after the collision he walked over to an officer standing nearby, and, as he did so, Mike also approached and said to him and the officer that "He was sorry, he went to pass the truck and the truck pulled out on him;" defendant thereupon had a bystander take Mike's name and address. Another person present testified that he heard Mike say that "He was sorry that he pulled out a little bit too far". The introduction of this hearsay testimony, so obviously damaging to plaintiffs' case, was not warranted on the ground that it was part of the res gestae. It would serve no useful purpose to cite and discuss the great number of decisions in this court as to whether utterances made under the particular circumstances of each case were or were not admissible in evidence under the res gestae rule. That rule, with its limitations, has been so frequently defined as to require little if any further comment; it was discussed at length in *Allen v. Mack*, 345 Pa. 407, 28 A. 2d 783, and more recently in *Commonwealth v. Noble*, 371 Pa. 138, 144-146, 88 A. 2d 760, 763, 764. Suffice it to say that hearsay declarations, to be admissible, must be "made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thought created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design.": *Commonwealth v. Werntz*, 161 Pa. 591, 597, 29 A. 272, 273; *Broad Street Trust Company v. Heyl Brothers*, 128 Pa. Superior Ct. 65, 70, 193 A. 397, 399. In short, they must be, not the narration or attempted explanation of a past occurrence, but in the nature of an emo-

tional, impulsive outburst made under the spell of excitement or shock caused by the occurrence to which they relate and uttered before the processes of the intellect have had opportunity to come into play. So tested, it would seem clear that the alleged declaration made by Mike should not have been admitted in evidence. It was obviously the result of reflection on his part as to how the accident had happened; having concluded that he himself had brought it about, he said, by way of apology, that "he was sorry." There was no testimony to show that he was injured, excited, or in a state of either physical or mental shock. Incidentally, there was testimony to the effect that his alleged declaration was made much later than two or three minutes after the occurrence of the accident, although it is true that the time element, while properly to be taken into consideration, is far from determinative of the question whether a so-called "verbal act" was or was not a part of the res gestae.

Plaintiffs naturally contend that, instead of attempting to establish Mike's version of the occurrence by hearsay testimony, defendant should have produced him as a witness since defendant knew his address and there was nothing to indicate that he was not available for attendance at the trial. The learned trial judge told the jury that "where there is a witness who has knowledge of material facts relating to the happening of an accident and he is not produced, the jury may infer that . . . he would have testified against the party whose responsibility it was to produce him," and that "the court is of the opinion that if Mr. Mike was a party in any way to the accident he was equally available to both plaintiffs and the defendant." This statement was obviously unfair to plaintiffs. The rule is, as stated by President Judge RICE, in *Wills v. Hardcastle,* 19 Pa. Superior Ct. 525, 529: "Where evidence

which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him." Here it was "naturally" defendant's "interest" to produce Mike as a witness since his defense rested entirely upon his contention that Mike was responsible for the happening of the accident; moreover, Mike's evidence was "within his control," whereas plaintiffs insisted that they had no knowledge whatever of any such person; finally, defendant offered no "satisfactory explanation" of his failure to produce Mike as a witness. Therefore, the rule stated should have been limited in its application to defendant, and not indiscriminately to defendant and plaintiffs alike.

Edward Frisch, a motorcycle patrolman who testified that he was the first officer on the scene of the accident, produced a police report which he was allowed by the court to use to refresh his memory, and which was subsequently itself admitted in evidence. This report had been written at police headquarters, not by Frisch himself, but by others, having been compiled by several officers, four or possibly six in number, who had followed Frisch to the scene, and only one of whom was identified. Neither Frisch nor any of these other officers had witnessed the accident, nor did any of them have any personal knowledge as to how it happened; nevertheless the report, while undoubtedly containing *some* statements of which Frisch might have had knowledge, as, for example, the position of the cars when he observed them, the state of the weather, etc., also purported to set forth, both in language and by diagram, the manner in which the accident had happened, namely, that Mike's car, traveling west and passing another vehicle, went over to its

wrong side of the street and struck defendant's car, which in turn collided head-on with plaintiff's car. Obviously this description of the occurrence could have been obtained by the officers only from witnesses interviewed by them, and therefore was purely hearsay testimony, affording no opportunity to plaintiffs to cross-examine the unknown, undisclosed persons upon whose statements this important feature of the report was based. In answer to defendant's contention that the report was admissible under the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, it is sufficient to state, as was said in *Freedman v. The Mutual Life Insurance Company of New York*, 342 Pa. 404, 414, 21 A. 2d 81, 86, that ". . . the Act did not intend to make relevant that which is not relevant, nor to make all business and professional records competent evidence regardless of by whom, in what manner, and for what purpose they were compiled, or offered." The statute itself conditions the admissibility of such a record upon the court's being of opinion that "the sources of information, method and time of preparation were such as to justify its admission." See *Lane v. Samuels*, 350 Pa. 446, 450, 39 A. 2d 626, 628; *McKeehan Estate*, 358 Pa. 548, 552, 57 A. 2d 907, 909; *Commonwealth v. Harris*, 351 Pa. 325, 330, 331, 41 A. 2d 688, 691, 692. It was clearly erroneous to permit the introduction of this police report into evidence.

Plaintiffs complain that defendant was allowed to place in evidence a United States Weather Bureau report certified by the custodian of the Weather Bureau records at Pittsburgh, which, they claim, was not properly authenticated.* However, it is unnecessary to dis-

---

* The records of the United States Weather Bureau are public records, and as such are admissible in evidence: *Nolt v. Crow*, 22 Pa. Superior Ct. 113, 119.

cuss this contention inasmuch as, in the event of another trial being had, a properly certified copy of the Weather Bureau's record can doubtless be obtained by defendant.

Judgment reversed and a new trial granted.