Weshalek *v.* Weshalek, Appellant.

Argued October 1, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*J. Campbell Brandon,* with him *Brandon, Millar, Rockenstein & MacFarlane,* for appellant.

*Samuel R. DiFrancesco,* with him *George P. Kiester* and *Kiester, Coulter & Gilchrist,* for appellees.

Opinion by Mr. Justice Allen M. Stearne, November 22, 1954:

The appeal is from a judgment for plaintiff in an action in trespass growing out of an automobile accident involving collisions of three motor vehicles. Three deaths resulted and serious injuries were sustained by the remaining occupants. Six actions were consolidated for the purpose of the present appeal. Counsel stipulated that the decision in this case should be binding as to all the other judgments. The determinative question is whether or not a statement, made by one of the defendants to a state policeman after the accident, was properly admitted as part of the *res gestae.*

The collision involved two tractor and trailer trucks and an automobile. One tractor and trailer was passing another tractor and trailer while proceeding in the same direction down a slight grade westwardly on Route 422, a three lane highway, about three miles west of the City of Butler. Approaching in the opposite direction was an automobile in which were three adults and five children. The evidence of how the accident happened is circumstantial with the exception of the alleged *res gestae* statement made by the driver of one of the trucks. The surviving parties were rendered incompetent to testify under the Act of May 23, 1887, P. L. 158, sec. 5, 28 PS 322. It was alleged that the automobile veered to its left to such an extent that it first collided with the passing truck and then struck the truck being passed. The automobile was found in the center lane of the three lane highway, the passing truck was found against the guard rail on the opposite or its wrong side of the road. The other truck which was being passed was found on its side down an embankment on the opposite or its left side of the road. The automobile and the passing truck caught fire and burned. Killed in the accident were the driver of the

automobile and two of the children. The remaining
occupants of the car were all injured and were the
present plaintiffs in this action with the personal rep-
resentatives of the two deceased children. The par-
ties defendant are the administrator d.b.n. of the es-
tate of the driver of the automobile and J. H. Sprecher,
Inc. and John Krall, the owner and driver, respec-
tively, of the tractor and trailer which was doing the
passing. The jury rendered a verdict against the ad-
ministrator d.b.n. of the estate of the driver of the
automobile and exonerated J. H. Sprecher, Inc. and
John Krall, the owner and driver of the truck above
mentioned. Claiming error in the admission at the
trial of a statement made by John Krall, defendant
so exonerated, the administrator d.b.n. of the deceased
driver of the automobile appeals.

William J. Steiner, a state police officer, arrived
at the scene of the accident approximately twenty-five
minutes after it had occurred. In his investigation
he noted Krall sitting on the guard rail by the side
of the road. Steiner testified: "He was in very bad
shape. He didn't have any clothes on, outside of a
pair of trousers, and he was holding them in front of
him. His face was severely burned, his hair all burned
off, with the exception of a quarter of an inch remain-
ing, and it was all singed." The officer further testi-
fied that Krall was not able to see very well, his eyes
were swollen and his eyelashes were burned off; that
he placed Krall in the police car to take him to the
hospital, that he tried to place a blanket over him, but
found it impossible so to do because "the pain was
too terrific"; that *on the way to the hospital he kept
asking* Krall ". . . questions, and he would answer as
best he could. I asked him what happened, and he
tried to explain." Over the objection of the defend-
ants' counsel the police officer was allowed to testify

to the following statement: "A. I asked him what happened, and he said he was passing a truck, going down a hill, and he was out in the center lane, passing this truck, and this car coming from the opposite direction toward him swerved to the left of the road, and then back over to her right; which would be to the left as you are traveling toward Butler, and then back to the right as you are traveling toward Butler. When she swerved back to her right it hit the truck at the right side. Q. Was there anything else he said about the accident? A. He said that was all he could remember."

To have admitted this testimony was error. It did not measure up to the substantive requirements of a spontaneous utterance deemed by the law to have sufficient probative force. In the absence of spontaneity or instinctive naturalness such evidence lacks credibility. In *Allen v. Mack*, 345 Pa. 407, 410, 28 A. 2d 783, this Court defines what constitutes a *res gestae* declaration. It is: ". . . a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties. In a res gestae declaration the exciting event speaks through the impulsive words of a participant or onlooker. It is in a psychological sense a part of the act itself. The apparent condition of the declarant's mind when the declaration is made is the test of the latter's admissibility as a part of the res gestae. To make the declaration admissible the state of the declarant's mind as induced by the shock of the occurrence must be such as to in-

tegrate his spontaneous declaration exclusively with the occurrence itself."

This rule has been cited with approval as late as *Haas v. Kasnot,* 371 Pa. 580, 92 A. 2d 171. The fact that the utterance is an answer to a question does not make it any less spontaneous or admissible: *Powe v. Pittsburgh Railways Co.,* 303 Pa. 533, 537, 154 A. 795; *Commonwealth v. Rumage,* 359 Pa. 483, 59 A. 2d 65; *Commonwealth v. Noble,* 371 Pa. 138, 88 A. 2d 760. Nor is such a statement inadmissible, as remote, merely because of a lapse of time. Each case must depend on its own facts: *Commonwealth v. Werntz,* 161 Pa. 591, 29 A. 272; *Commonwealth v. Stallone,* 281 Pa. 41, 45, 126 A. 56; *Hansky v. Jones & Laughlin Steel Corporation,* 149 Pa. Superior Ct. 605, 27 A. 2d 789.

The test of admissibility of a declaration as *res gestae* is whether or not the circumstances were such as to preclude *premeditation and consideration.* Mr. Chief Justice HORACE STERN, speaking for the Court, said in *Haas v. Kasnot,* supra, p. 583: ". . . In short, they [the declarations] must be, not the narration or attempted explanation of a past occurrence, but in the nature of an emotional, impulsive outburst made under the spell of excitement or shock caused by the occurrence to which they relate and uttered before the processes of the intellect have had opportunity to come into play. . . ."

Thus tested, it is clear that the statement by Krall to the state police officer should not have been admitted into evidence under the guise of being part of the *res gestae.* Krall, injured and suffering as he was, nevertheless, had sufficient opportunity to reflect on the happening of the accident. The statement was not occasioned by any emotional or impulsive outburst, but consisted of a considered narration of his idea as to how the accident happened. Such a statement given

under such circumstances cannot be considered to have been due to excitement or shock following the accident. The account was obviously elicited by prodding, the antithesis of impulsiveness.

The order refusing judgment for defendant n.o.v. is affirmed. The judgment for plaintiff is reversed and a new trial ordered.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The Majority Opinion says that in order for an utterance to be admitted as part of the res gestae, it must be one which precludes the possibility of premeditation and consideration. The Majority says further that the passage of time does not invalidate the utterance, nor does the fact that it is made in answer to a question render it any less spontaneous and admissible in evidence. After laying down these indisputable standards of proof, standards which are overwhelmingly met by the facts in this case, the Majority surprisingly declares that the statement made by John Krall was *inadmissible*. This *non sequitur* is disturbing.

The authority quoted by the Majority in support of its unusual position could well be cited to establish the opposite of what the Majority contends for it. In the case of *Haas v. Kasnot,* 371 Pa. 580, the circumstances were entirely dissimilar from those which surround the Krall utterance. Chief Justice HORACE STERN, in writing the Opinion for the Court in the *Haas* case reasoned (without, of course, knowing *this* case would come over the horizon of the future) that were the facts *there* like those we know in fact exist here, the statement would have been admissible. Chief Justice STERN said: "There was no testimony to show

that he was injured, excited, or in a state of either physical or mental shock." In the case at bar there *was* overwhelming evidence of injury, excitement, physical and mental shock. The Majority's own recitation of the facts speak vividly and loudly of injury, excitement, physical and mental shock. I will quote from the Majority Opinion: "Steiner testified: 'He (Krall) was in very bad shape. He didn't have any clothes on, outside of a pair of trousers, and he was holding them in front of him. His face were severely burned, his hair all burned off, with the exception of a quarter of an inch remaining, and it was all singed. The officer further testified that Krall was not able to see very well, his eyes were swollen and his eyelashes were burned off; that he placed Krall in the police car to take him to the hospital, that he tried to place a blanket over him, but found it impossible to do because 'the pain was too terrific'; that *on the way to the hospital he kept asking* Krall '. . . questions, and he would answer as best he could. I asked him what happened, and he tried to explain.'" (Italics in Majority Opinion)

Would a person in Krall's horrible state as here described be likely to deliberate, reflect, weigh, counterweigh and concoct evidence in anticipation of some possible lawsuit? We have said many times that: "No definite time-limit or distance from the crime or event in issue can be fixed by the Courts to determine what spontaneous utterances are admissible; *each case must depend on its own facts and circumstances*: Commonwealth v. Gardner, 282 Pa., supra; Commonwealth v. Stallone, 281 Pa. 41, 126 A. 56." (*Com. v. Noble,* 371 Pa. 138, 145.)*

What are the facts and circumstances in this case? In the early morning of July 25, 1951, on a State high-

* (Italics mine unless otherwise indicated.)

way near Butler, Pennsylvania, a Packard automobile, a truck and a huge tractor-trailer (the kind used for transporting automobiles) crashed into one another with such force and violence that all three vehicles were demolished. The wreckage burst into flame and as a consequence of both the crash and the fire a grown woman and two small children were instantly killed. Five other persons were seriously injured. From the flaming catastrophe John Krall emerged more dead than alive; his clothes had been ripped from his body, his face was a mass of burns, what was left of his burned hair smoldered, he was partly blinded, his eyes were swollen, his eyelashes were gone. His nude body was so seared and raw with burns and lacerations that he could not stand even the weight of a blanket—"the pain was too terrific." The police officer Steiner testified that when he arrived on the scene—"The road was blocked, and as I broke over the hill I saw the fire truck setting in the road, and smoke was going in the air, and steam, and the road was littered with everything you can think of; clothing; there was a little coaster wagon; basket, suitcases; and the one truck, the car carrier, was setting on the guard railing, the trailer sticking part way out of the road; everything in a mess."

From this disaster and horror, John Krall was lifted into a car to be taken to the hospital. The officer rode with him and asked questions to which Krall gave answers. To assume that while in this torture of pain, misery and intolerable hurt, Krall was capable of fabricating a story is simply to defy physical realities and to ascribe to the human brain a deviousness entirely out of keeping with human experience and observation. The picture of John Krall without clothing, bleeding, stunned and his whole body undergoing indescribable suffering is one which negatives every

suggestion of invented replies and calculated answers. If any mental faculty worked it could only be that of memory and it functioned simply as a phonograph record being spun on the table of a trance-like state under the needle of the officer's questioning. His response could only be automatic and as spontaneous as a cry of pain from a lacerating wound or blow.

The Majority Opinion says that Krall's statement "was not occasioned by any emotional or impulsive outburst, but consisted of a considered narration of his idea as to how the accident happened." There is not a word in the record which can substantiate the conclusion of the Majority that Krall's statement was a "considered narrative". In *Powe v. Pittsburgh Rys. Co.*, 303 Pa. 533, 536, we said: "It is well recognized that the judicial idea of matters within the res gestae rule is broader under our American decisions than under the very restricted interpretation employed by English Courts: Chapman on Evidence, page 22 . . . 'That utterances must be *strictly contemporaneous with the exciting cause, to be within the rule, is a fallacy*[1] they may be subsequent to it provided there is not time for the exciting influence to lose its sway and be dissipated . . . Furthermore, *there is no definite and fixed limit* of time. Each case must depend upon its own facts': Wigmore, supra, section 1750 . . ."

Although much has been said on the subject of res gestae, the question keeps constantly recurring as to whether a given utterance falls within the limits of the indicated salutary rule. No one can speak with infallible wisdom in this field of the law, and yet it would seem that the problem to be resolved is one which should not fail to respond to the most natural and normal inquiry, namely, Were the circumstances of the case such as to preclude the possibility of a shrewd and self-calculating answer? As I read the testimony in

this case, I am convinced that John Krall's replies to the questions advanced by the police officer were as devoid of guile as those coming from the lips of a man *in extremis*. I can gain much reassurance in this conclusion from reading what this Court said in the case of *Com. v. Harris*, 351 Pa. 325, 336: "The mere fact that the statement of the victim was in response to a question did not make it *in*voluntary and did not destroy that spontaneity which is the characteristic of a res gestae declaration. When anyone suddenly meets a person who has just been severely injured, he naturally asks: 'What happened to you?' or 'Who shot you?' and when the latter immediately replies, his statement is no more open to the charge of being a fabrication than the same statement would be if there had been no question asked. It would be a totally unwarranted handicap to the administration of justice if res gestae declarations, which are usually of great probative value, were excluded because a simple, natural question was put to the fatally injured victim a few minutes after the occurrence of the tragic event. Victims of unexpected assaults are not likely while suffering the agonies of a murderous assault just made upon them to fabricate a lie as to the identity of their assailant. *The real test of the admissibility of a declaration as res gestae is whether the circumstances under which it was made were such as seem to preclude premeditation and design on the part of the declarant.* The declaration made in the instant case by a grievously assaulted man, at the place of the assault and apparently only a few moments after it was made and while his assailant was apparently still nearby, fully met the test of admissibility. The declaration obviously emanated directly from the perceptions of the victim while his mind was still under the domination of the shock of the sudden assault. *At that*

*tragic moment he would not be likely to fabricate a falsehood in respect to what he had just experienced, for at such a time considerations of calculated policy are not in the ascendant."*