409 A.2d 371

COMMONWEALTH of Pennsylvania, Appellee,

v.

Marcell GREEN, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Harvey LEEDY, Appellant.

Supreme Court of Pennsylvania.

Dec. 21, 1979.

324

John E. Feather, Jr., John C. Tylwalk, Lebanon, for appellants.

Thomas S. Long, Asst. Dist. Atty., Robert W. Feeman, Lebanon, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On March 18, 1975, Marcell Green and Harvey Leedy were convicted of raping Trudy Jo Groff by a jury in Lebanon County.[1] Post-verdict motions were denied by the Lebanon County Court of Common Pleas, en banc, on September 21, 1976. Sentences were imposed on October 18, 1976. On appeal, the Superior Court affirmed without opinion. We granted the petitions of Green and Leedy for allocatur. The record discloses the following:

At trial, Groff testified that, at 1:30 a. m. on November 21, 1974, she was forcibly removed from the automobile of

1. Richard Meade was also charged with raping Groff on the same occasion. Though a fugitive at the time of the appellants' trial, he was later tried separately and acquitted.

Candace Troutman, which was parked at the Illusion Nite Club in Annville, Lebanon County, and forced into an automobile operated by Larry Lampkin in which Meade, Green and Leedy were passengers; that she was then driven to the residence of Kim Jones at 1027 Willow Street, Lebanon, where she was raped by Meade, Green and Leedy; that, after the alleged rapes, she was driven home by Green, where they arrived at 4:10 a. m.; that, later that same morning, she told her mother of the alleged rapes; that Patrolman George Gruber of the Lebanon City Police Department arrived at the Groff home and received her statement; that he then summoned Detective Carl Capello who arrived at the Groff home at approximately 7:30 a. m. on November 21, and also received a statement from Groff.

The appellants offered a defense of consent. Each testified that no force or threats of force had been used at the Illusion Nite Club, in the automobile, or at 1027 Willow Street, the site of the alleged rape, and that Groff had willingly accompanied them, even sitting on the lap of Green and kissing him during the drive to Lebanon. Appellants further testified that, on the morning in question, Groff consented to sexual intercourse with Green, Leedy, Meade and Lampkin. Green also testified that he had previously had intercourse with Groff. Charles Ditzler, Kim Jones and Lampkin appeared as witnesses for the defense and their testimony supported that of the appellants. These witnesses also testified Groff's reputation for chastity was not good.

For the reasons that follow, we conclude Green and Leedy are entitled to a new trial.

Over objection, Detective Capello was permitted to testify to Groff's prior statement concerning the facts of the alleged rape. The trial court admitted this testimony under the res gestae exception to the hearsay rule. This was error.

The testimony of Detective Capello, concerning the statement made to him by the prosecutrix at approximately 7:30 a. m. on the morning of the alleged rape, was not admissible under the res gestae exception to hearsay. Here,

the rape purportedly occurred between 2:00 a. m. and 4:00 a. m. The statement was given to Detective Capello upon his arrival at 7:30 a. m. after similar statements had been made to the prosecutrix's mother and the original investigating officer Gruber.

This Court has previously recognized that "res gestae" is actually a generic term encompassing four discrete exceptions to the hearsay rule: (1) declarations as to present bodily conditions; (2) declarations of present mental states and emotions; (3) excited utterances; and, (4) declarations of present sense impressions. See *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978); *Commonwealth v. Colley*, 465 Pa. 35, 348 A.2d 103 (1975); McCormick, Evidence § 286 (2nd ed. 1972). Obviously, Groff's statement to Detective Capello, given approximately three and one-half hours after the alleged incident, does not qualify under the first, second and fourth of the above exceptions. Her statement, as related by Detective Capello at trial, did not describe or refer to present physical, mental or emotional states, nor did it convey a "present sense impression" since such a statement must, by definition, be contemporaneous with the event to which it refers. See *Commonwealth v. Pronkoskie*, supra, 477 Pa. at 137 n. 4, 383 A.2d at 860 n. 4; McCormick, Evidence § 297 (2nd ed. 1972). Thus, the only aspect of "res gestae" which might apply would be the excited utterance exception.

In *Commonwealth v. Pronkoskie*, supra 477 Pa. at 137–138, 383 A.2d at 860, we delineated the proper analysis for determining whether a statement qualifies as an excited utterance. There, we stated:

"To come within the excited utterance exception to the hearsay rule, a statement must be:

'a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declara-

tion must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.'

*Allen v. Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942). "See also *Commonwealth v. Little*, 469 Pa. 83, 364 A.2d 915 (1976); *Commonwealth v. Cooley*, supra. Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event. See *Commonwealth v. Little*, supra; *Commonwealth v. Cooley*, supra."

With regard to the first requirement, undoubtedly the occurrence of a rape, as alleged here, would be a terribly shocking event. However, as previously noted, for a declaration about the event to be admissible, it must have been made so close to the occurrence, in point of time, as to exclude the likelihood of its having emanated from the reflective thought processes. See *Commonwealth v. Pronkoskie*, supra; *Commonwealth v. Little*, supra; *Commonwealth v. Cooley*, supra; *Allen v. Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942). This factor is particularly important to the second requirement, spontaneity.

Here, Groff gave her statement to Detective Capello approximately three and one-half hours after the alleged incident and after she had already related the events to her mother and the original investigating officer, Gruber. We have repeatedly stated that "there is no clear-cut rule as to the time sequence; whether the actual delay between the event and the statement is sufficient to negate 'spontaneity' must be resolved in light of the particular facts of each case." *Commonwealth v. Pronkoskie*, supra 477 Pa. at 142, 383 A.2d at 863. See also *Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1974); *Cody v. S. K. F. Industries, Inc.*, 447 Pa. 558, 291 A.2d 772 (1972); *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A.2d 291 (1966); *Commonwealth v. Stokes*, 409 Pa. 268, 186 A.2d 5 (1962). Also, in *Cody v. S. K. F.*

*Industries, Inc.,* supra, 447 Pa. at 564, 291 A.2d at 775, we stated:

"The basis for the admission of the utterance is its spontaneity, thus all utterances which do not display the mandated instinctive naturalness must be excluded for fear that the words will emanate in whole or in part from the declarant's reflective faculties. The declaration must be spoken under conditions which insure that it is not the result of premeditation, consideration or design, and it cannot be in the form of a narration or attempted explanation of past events, thus the process of the intellect cannot have had an opportunity to be set in motion. *Commonwealth v. Cheeks* [supra]; *Weshalek v. Weshalek*, supra [379 Pa. 544, 109 A.2d 302]; *Haas v. Kasnot*, supra [371 Pa. 580, 92 A.2d 171]."

The statement in the present instance was given in the form of a narration and as an explanation of past events three and one half hours after the alleged incident and after the prosecutrix had spoken with her mother and the original investigating officer concerning the incident. These circumstances negate the required spontaneity and prevent the statement's admission as an excited utterance.

Moreover, while the fact that a complaint was made is admissible in a rape case, along with "so much of the complaint as will identify the occurrence complained of with the crime charged," *Commonwealth v. Krick*, 164 Pa.Super. 516, 521, 67 A.2d 746, 749 (1949), the testimony in question went beyond these boundaries. Here, the detective related the occurrence of the rape, as well as its time and place and the identity of the alleged rapists, as stated to him by the prosecutrix. There is some authority for the admission of these particulars of the complaint, namely Wigmore on Evidence, Third Ed. § 1136, p. 307 (time and place) and *Commonwealth v. Krick*, supra (identity of alleged rapist). However, we need not decide whether such facts fit within the scope of the above rule since Officer Capello also stated that Groff, who had taken the stand before him, had not testified to anything different than what she had told him

that morning. An all encompassing statement such as this clearly goes beyond identifying the complaint and its nature and is, therefore, not properly admissible under that principle.[2]

Appellants also contend that the trial court erred in refusing to permit the introduction of evidence of Groff's prior consensual intercourse with Meade, one of the persons accused of raping her.[3]

We agree the introduction of evidence of prior sexual experience of the co-accused with the prosecutrix should have been permitted.[4] However, we do not believe evidence that the sexual encounters took place within the context of group intercourse is admissible since, given the facts instantly,[5] that would involve evidence of the prosecutrix's sexual contact with men other than those presently accused.

Although it has been determined that proof of specific sexual acts are not relevant to proof of a victim's reputation for chastity, *Commonwealth v. Pilosky*, 239 Pa.Super. 233, 362 A.2d 253 (1976); *Commonwealth v. Wink*, 170 Pa.Super. 96, 84 A.2d 398 (1951), or to her credibility, *Commonwealth v. Crider*, 240 Pa.Super. 403, 361 A.2d 352 (1976), it is widely accepted that particular sexual acts with an accused prior to

2. Neither Groff's mother nor Gruber, the original investigating officer, testified in this case. The only prosecution witness besides Groff and Detective Capello was Candace Troutman who merely testified about the events which occurred at the Illusion Nite Club. Thus, the trial court's error in permitting Detective Capello to corroborate Groff's entire testimony concerning the alleged rape is *not* harmless by reason of such evidence being otherwise introduced. See *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978); *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

3. Again, we note Meade was charged with raping Groff on the same occasion as appellants Green and Leedy. However, he was a fugitive and, thus, unavailable to stand trial with the appellants.

4. We discuss this issue, despite reversing on the basis of the initial assignment of error, in order to advance the efficient administration of justice.

5. Neither of the other persons, who purportedly took part in prior consensual group intercourse involving Meade and Groff, were accused of rape in the present case.

the alleged crime may be proved as tending to show consent. See Wigmore on Evidence, Third Ed. § 402(1)(a); 75 C.J.S. Rape § 63; 65 Am.Jur.2d § 67.[6] See also Wigmore on Evidence, Third Ed. §§ 924(a), 924(b)(2), 982(4). In its opinion, the Lebanon County Court of Common Pleas, en banc, admitted that had Meade, the co-accused, been on trial with the present defendants, the evidence of his prior sexual contact with the prosecutrix would have been allowed.

■ The fact that a co-accused is not brought to trial with others, when all are accused of the rape of the same person in the same incident, should not prevent the admission of evidence of prior sexual contact between the co-accused and the prosecutrix.[7] Such a circumstance should not prevent the introduction of otherwise relevant and admissible evidence. The Court of Common Pleas, en banc, also cited Wigmore on Evidence, Third Ed. § 402(1)(a), as authority for the proposition that the evidence contested here would have been exculpatory as to Meade only and, presumably, was thus irrelevant as to the present defendants. Common sense indicates that such evidence would indeed be relevant to the issue of consent to the present defendants since, as previously stated, all were accused of rape of the same person during the same incident.[8]

6. 18 Pa.C.S.A. § 3104 permits the introduction of evidence of an alleged victim's prior sexual conduct with a defendant while excluding evidence of an alleged victim's past sexual conduct with others. Although this statute was not in effect at the time of appellants' trial, it is influential as an indicator of the public policy on this issue.

7. We note that this Court has extended the co-conspirator exception to the hearsay rule in just such a manner, so that the statements or conduct of a co-participant in a crime, occurring during a conspiracy, are admissible even where that co-participant is not on trial and no conspiracy is charged. Commonwealth v. Stoltzfus, 462 Pa. 43, 337 A.2d 873 (1975); Commonwealth v. Garrison, 398 Pa. 47, 157 A.2d 75 (1959). Since possibly incriminating alleged acts and statements of Meade, the co-accused, were admitted into evidence here (presumably, pursuant to the above rule), it would be unfair to exclude possibly exculpatory evidence because of his absence.

8. This is particularly true here since evidence of prior intercourse between the prosecutrix and one of the present defendants was introduced.

However, as stated earlier, evidence that the prior intercourse between the absent accused and the prosecutrix took place within the context of group intercourse would not be admissible where that would constitute evidence of specific sexual conduct with others.[9]  The majority view, reflected in such Pennsylvania Superior Court decisions as *Commonwealth v. Pilosky*, supra;  *Commonwealth v. Wink*, supra;  *Commonwealth v. Crider*, supra, and adopted here,[10] is that evidence of specific sexual acts between a victim and other persons than the accused is inadmissible to prove consent.[11] See Wigmore on Evidence, Third Ed. § 402(1)(d), 75 C.J.S. Rape § 63;  140 A.L.R. 364 *et seq.*

Due to the trial errors outlined here, the case must be retried.[12]

The order of the Superior Court and the judgments of sentence are reversed and a new trial is ordered.

MANDERINO, J., did not participate in the decision of this case.

9.  Again, the other men who purportedly took part in the previous group intercourse were not accused of the present offense.

10.  See footnote 6, supra.

11.  This position is based on the view that admission of such evidence would result in undue prejudice and surprise to the victim and distract the proceeding with collateral issues.  See 140 A.L.R. 364 *et seq.*, Wigmore on Evidence, Third Ed. § 200, p. 682.

12.  In view of what has already been said, we need not reach or discuss appellants' remaining assignments of error:
(1) that the trial court erred in refusing to grant a motion for a mistrial due to the conduct of the prosecutrix during the trial;  (2) that the trial court erred in the instructions it gave in response to a question from the jury by confusing the issues of willingness and compulsion;  (3) that the trial court erred in refusing to give Point No. 3 of appellants' requested instructions;  (4) that the trial court erred in refusing to grant a mistrial or a continuance due to the arrest of a primary defense witness in the court's hallway immediately prior to trial;  and, (5) that the trial court erred in instructing the jury that it was unfair for the appellants to introduce evidence of the prosecutrix's bad reputation for chastity, when they had contributed to that reputation.

ROBERTS, J., filed a concurring opinion in which NIX, J., joins.

FLAHERTY, J., filed a dissenting opinion.

FLAHERTY, Justice, dissenting.

Although the majority has correctly set forth the law of the Commonwealth regarding excited utterances as an exception to the hearsay rule, I cannot agree that when a woman is raped by three (3) individuals between 2:00 and 4:00 a. m., and makes a statement at 7:30 a. m., two and one-half hours later, that such a statement could not be an excited utterance as a matter of law. Whether the witness was so affected by the event—in this case a multiple rape—so that her, " . . . thought processes [were] inoperable . . . and . . . that her declarations were a spontaneous reaction to that startling event . . . " is for the trier of fact in a particular case, not to be determined as a matter of law by a far removed and detached appellate court. I further dissent from the holding that evidence of prior sexual experience with *one* person is admissible to show consent to an alleged *multiple* rape, under *any* circumstances. Such a holding strains human experience and is a devastating blow to the dignity and sanctity of womanhood.

I dissent.

ROBERTS, Justice, concurring.

I agree that the trial court committed reversible error in admitting witness Capello's testimony under the res gestae exception to the hearsay rule. Therefore I join the portion of the opinion so holding. The balance of the opinion, however, dealing with the admissibility of evidence of prior sexual experience, is unnecessary to the proper disposition of the case, and the analysis is highly questionable. I see no reason to engage in an advisory discussion of non-dispositive matter, and therefore decline to join that portion of the opinion.

NIX, J., joins in this concurring opinion.