J-S28017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JASON LEVON PATE :
:
Appellant : No. 1810 MDA 2018

Appeal from the PCRA Order Entered October 3, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000165-2009

BEFORE: BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED AUGUST 14, 2019**

Jason Levon Pate appeals from the order denying his petition filed under

the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. He raises

trial counsel ineffectiveness claims. We affirm.

The trial court set forth the following factual history:

> On December 10, 2008, Officer Marc Moule with the
> Harrisburg City Police received a call to respond to the area
> of 2511 Derry Street for a report of a black male allegedly
> breaking into a vehicle. As Officer Moule approached the
> scene, he witnessed a black sedan with its hazard lights
> flashing. Officer Moule positioned his vehicle approximately
> 20 feet away and approached the vehicle. As Officer Moule
> approached, he witnessed an individual who would later be
> identified as [Pate].
>
> As Officer Moule approached, [Pate] exited the vehicle from
> the rear driver's side. Officer Moule commanded [Pate] to
> stop and asked what he was doing. [Pate] responded that
> he was "having sex with his girl." This prompted Officer
> Moule to look through the driver's side window of the
> vehicle. He observed a woman, later identified as the victim,

_____
* Retired Senior Judge assigned to the Superior Court.

Lessli Gingery [("Victim")], fully reclined in the front passenger seat, not moving.

In response to Officer Moule's request for identification, [Pate] responded that he left it at home. [Pate] provided the officer with his name and date of birth. Officer Moule proceeded to check on the well-being of the person in the passenger seat. As he opened the passenger side door, he observed a female naked from the waist down with her legs spread apart. Officer Moule detected a very strong odor of alcohol in the car. After several unsuccessful attempts to wake the passenger, Officer Moule called for paramedics to transport her to the hospital.

Officer Moule directed the backup officer to arrest [Pate]. At trial, Officer Moule identified [Pate] as the man he observed with the unconscious passenger, [Victim], in the vehicle.

[Victim] remained unresponsive upon arrival at Harrisburg Hospital. The emergency room physician, Dr. Jed Seitzinger, testified that when [Victim] regained consciousness, she knew who she was, but did not know where she was.

Dr. Seitzinger testified that he could smell alcohol on her breath when she answered his questions. Toxicology tests revealed her blood alcohol level as 0.32. Based upon information that [Victim] was the victim of an alleged sexual assault, upon medical clearance and her consent, [Victim] underwent a "safe exam", an examination conducted for collection of evidence from the victim of a sexual assault.

Harrisburg Hospital Nurse Mary Jane Laughlin conducted the safe exam. Because [Victim] could not remember her encounter with [Pate], Ms. Laughlin collected various forms of physical evidence, namely, vaginal, oral, and rectal swabs. Ms. Laughlin did not test for any "date rape" drugs due to the fact that the safe exam was conducted approximately six to seven hours after [Victim] was brought into the emergency room, and such drugs only stay in the system for a short period of time.

Detective Elijah Massey of the Harrisburg Police Department executed a search warrant for a blood test of [Pate]. During the blood test, [Pate] admitted to Detective Massey that he engaged in sexual intercourse with [Victim].

The Pennsylvania State Police crime lab analyzed evidence collected from [Victim] and [Pate]. Analysis of samples obtained from [Victim] confirmed the presence of spermatozoa on the vaginal and rectal swabs. Further analysis by Pennsylvania State Police forensic scientist Michael Biondi determined that sperm cells from the vaginal and rectal swabs matched the DNA profile from the blood sample acquired from [Pate].

[Victim] testified that she visited an establishment known as Bill's Café on Derry Street with her friend April Robles on the evening of December 9, 2008 into the early morning of December 10, 2008. [Victim] testified that she bumped into [Pate] and apologized for doing so. She testified that she had a brief conversation with [Pate], but never indicated in any way that she was interested in engaging in sexual activities with him. [Victim] testified that at one point, she left her drink unattended while she went to the restroom. [Victim] has no recollection of any events during the rest of the evening. She next remembers waking up in a hospital room.

[Victim's] friend, April Robles, went to Bill's Café with her that evening. Ms. Robles testified that she noticed [Victim] missing at around 12:45 A.M. Ms. Robles became concerned as it became late, she did not know how she would get home. She observed [Victim's] belongings but could not locate her; she assumed [Victim] had stepped out. Ms. Robles called a cab for a ride home. Police contacted Ms. Robles the next day and told her that [Victim] was in the hospital. When she visited [Victim] at the hospital, police showed her a photograph of [Pate]. Ms. Robles identified [Pate] as the man sitting next to [Victim] at the bar.

Trial Court Opinion, filed Nov. 14, 2018, at 3-6 (citations to record omitted) ("1925(a) Op.").

At trial, Pate's counsel and the trial court conducted a colloquy of Pate regarding his decision to not testify, which included Pate's acknowledgement that his decision to not testify was "based on the fact that [he had] significant

*crimen falsi* and [he] could be cross-examined about that." N.T., 5/24/10-5/26/10, at 175-76.

A jury convicted Pate of rape of an unconscious person and sexual assault.[1] The trial court sentenced Pate. Pate filed a motion for reconsideration of sentence, which the trial court granted in part, finding the sexual assault conviction should have merged with the rape conviction for sentencing purposes. The trial court re-sentenced Pate to ten to 20 years' imprisonment. Pate appealed, and this Court affirmed the judgment of sentence on November 5, 2012.

On October 16, 2013, Pate filed a timely counseled PCRA petition, and the Commonwealth filed an answer. The PCRA court granted numerous requests to continue the evidentiary hearing, and held a hearing on April 27, 2016, and November 22, 2016.

At the hearing, Pate's trial counsel testified that he initially met with Pate and his parents in December 2008 and January 2009. N.T., 4/27/16, at 13. Pate and his parents mentioned at the initial meetings that Pate's cell phone was "downtown" in police custody and that the phone had text messages between Pate and Victim. *Id.* at 10-12. Counsel did not request the phone from the police until May 2009, after which he was informed that the phone had been destroyed pursuant to a police department policy that required the destruction of personal items after 30 days. *Id.* at 12.

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(3) and 3124.1, respectively.

- 4 -

Counsel requested video surveillance from Bill's Café, but that also had been destroyed. *Id.* at 26. In August 2009, counsel learned that "one or multiple [employees]" that were employed at the time of the incident, "would not have been employed at [Bill's Café] . . . at or around the time of trial." *Id.* at 68.

Pate provided counsel with the name of an individual who was with him at the bar on the night of the incident, Tony Maldonado. N.T., 4/27/16, at 27. Counsel testified that Pate's girlfriend, Amanda Huss, was not able to provide a telephone number for Maldonado. *Id.* at 28. He stated his "attempts [to contact Maldonado] would have been through [Huss]." *Id.* at 30. He further testified that Huss informed counsel that Maldonado "was [not] available or maybe he was not willing to come to court to testify, or we were just not able to get in contact with him maybe because of a disconnected number and we didn't have his updated contact information." N.T., 11/22/16, at 62. On cross-examination, counsel agreed he reviewed transcripts of prison phone calls, including a call in which Pate stated that "[Maldonado] isn't coming to [c]ourt for me." *Id.* at 91.

Trial counsel also testified regarding the Pate's decision to not testify. He noted that he had concerns about Pate testifying because of Pate's prior record, which included a theft-related offense from 2000. *Id.* at 80-81, 85.

Maldonado testified at the evidentiary hearing. He testified that on the night of the incident he was with Pate at the bar. *Id.* at 118. He stated the victim was grabbing and rubbing Pate. *Id.* He said he was not contacted by

Pate or his counsel in 2008 or 2009 and he would have been available to give a statement if counsel had contacted him. *Id.* at 122. On cross-examination, Maldonado testified that Huss "might have reached out to [him]," but that "[s]he said that [counsel] was going to reach out to me," and counsel did not. *Id.* at 130. He testified he left the bar before Pate. *Id.* at 121.

Pate also testified. He stated that counsel told him that he should not testify because if he did he could be questioned on cross-examination about his prior conviction for possession with intent to distribute a controlled substance ("PWID"). *Id.* at 136. He would have testified if counsel had not informed him that the PWID conviction could be used to impeach him. *Id.* at 137.

Following the hearing, the PCRA court directed the parties to file proposed findings of fact and conclusions of law. The court granted numerous extensions of time, and the parties filed the findings of fact and conclusions of law in March 2018.

The PCRA court denied the petition. Pate filed a timely notice of appeal.

Pate raises the following issue on appeal: "Whether the trial court erred by denying [Pate's] post-sentence motion?" Pate's Br. at 8 (some capitalization omitted). The issue encompasses the claims that the PCRA court erred in denying the following trial counsel ineffectiveness claims: (1) counsel failed to interview potential witnesses; (2) counsel failed to secure Pate's cellular telephone; (3) counsel failed to request a missing evidence

instruction; and (4) counsel failed to properly advise Pate as to his right to testify.

"[I]n reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error." *Commonwealth v. Andrews*, 158 A.3d 1260, 1262-63 (Pa.Super. 2017). A PCRA petitioner will only prevail on a claim that trial counsel was ineffective through pleading and proving each of the following: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." *Commonwealth v. Grove*, 170 A.3d 1127, 1138 (Pa.Super. 2017). A failure to plead or prove any prong will defeat an ineffectiveness claim. *Id.*

Pate first claims his trial counsel was ineffective for failing to interview and conduct a reasonable investigation of potential witnesses, including April Robles, Tony Maldonado, and other patrons and employees of Bill's Café who were present on the night Victim and Pate were at the establishment. Pate claims that he provided trial counsel with the name of two witnesses, including Maldonado, but counsel did not contact them. He claims the witnesses could have testified that Victim was not so intoxicated as to impair her ability to make decisions and that Victim and Pate were interacting with each other at the bar. He further maintains counsel was ineffective for failing to contact

Commonwealth witness Robles prior to trial, for not seeking the names of the employees of Bill's Café until nine months after the date of the incident, and for not attempting to contact any of the employees until 17 months after the arrest.

To establish counsel was ineffective for failing to investigate and interview a witness, the petitioner must plead and prove: "(i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial." **Commonwealth v. Pander**, 100 A.3d 626, 639 (Pa.Super. 2014) (*en banc*).

Here, the PCRA court found counsel attempted to contact Maldonado through Pate's girlfriend, who conveyed to counsel that Maldonado would not speak to counsel even though he knew Pate was arrested for rape. 1925(a) Op. at 11. It further found that counsel made reasonable attempts to investigate Maldonado as a witness. **Id.** In addition, the court found that Pate failed to prove that Maldonado was available and willing to testify or that the lack of Maldonado's testimony prejudiced him. **Id.** at 11-12. The court noted that Maldonado testified at the evidentiary hearing that he left the bar before Pate and did not know what occurred thereafter. **Id.** at 12.

The record supports the PCRA court's findings and it did not err in finding counsel was not ineffective. Pate failed to prove counsel did not attempt to

contact Maldonado, that Maldonado was available and willing to testify, or that Pate suffered prejudice, as Maldonado testified that he left the bar before Pate.

Although Pate mentions other witnesses in his appellate brief, his PCRA petition listed only Maldonado, and Maldonado was the only witness to testify at the PCRA hearing. Therefore Pate waived any claim that counsel was ineffective for failing to investigate or call any other witness.

Pate has not established that any other witness was available and willing to testify on his behalf. He also has not established that counsel's efforts in contacting Bill's Café were unreasonable or that Pate suffered any prejudice.

Pate next claims counsel was ineffective for failing to secure Pate's cellular telephone. He argues the Harrisburg Police Department took the phone into custody, and Pate and his family informed counsel that the phone contained text messages between Pate and Victim. Pate argues counsel was ineffective because the phone was destroyed before counsel requested it and because he did not subpoena the phone records.

"Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary." *Commonwealth v. Eichinger*, 108 A.3d 821, 847 (Pa. 2014) (citing *Commonwealth v. Cox*, 983 A.2d 666, 692 (Pa. 2009)). "[A]n evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight." *Commonwealth v. Bridges*, 886 A.2d 1127, 1132 (Pa. 2005).

The PCRA court found counsel made reasonable efforts to locate Pate's cell phone and that "[n]either the unavailability of the phone because of a destruction policy or the absence of phone records prejudiced [Pate]." 1925(a) Op. at 6. It noted that counsel was retained in December 2008 and met with Pate before the January 2009 preliminary hearing. During that meeting, Pate informed counsel that the police had confiscated the phone during the arrest. The court also found that in May 2009, six months after this meeting and more than one year before trial, counsel requested that the assistant district attorney produce the phone. He then learned that the phone was destroyed 30 days after the arrest, pursuant to a destruction policy for un-retrieved personal items. *Id.* at 7. The PCRA court concluded counsel "exercised due diligence in his request for production of the cell phone. Pursuant to the destruction policy, of which [counsel] had no reason to be aware, the phone would have been destroyed within days of the January 7, 2009 preliminary hearing." *Id.* It also noted that "[Pate's] family made no effort to obtain the phone following [Pate's] arrest." *Id.* The court further found that "[e]ven if phone calls occurred between [Pate] and [Victim], such phone contact would not refute the overwhelming[,] direct[,] and scientific evidence that [Pate] assaulted [Victim] while she was unconscious." *Id.* at 8. It found the suggestion the phone records would have supported [Pate's] defense "purely speculative," noting Pate "offered no evidence that text messages existed or what their content would have been." *Id.*

The record supports the PCRA court's factual findings and the trial court did not err in finding the ineffectiveness claim lacked merit. Pate failed to establish his counsel acted unreasonably regarding the phone and failed to establish any prejudice.

Pate next argues counsel was ineffective for failing to request a missing evidence instruction for the cellular telephone. He argues the Commonwealth was in sole possession of the phone. Pate's Br. at 25. He maintains the text messages were material to whether "the parties were engaged in flirty behavior," and "would not have been merely cumulative." *Id.* at 25-26.

A missing evidence instruction is appropriate "where evidence which would properly be part of a case is within the control of the party in whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so." *Clark v. Phila. Coll. of Osteopathic Med.*, 693 A.2d 202, 204 (Pa.Super. 1997) (quoting *Haas v. Kasnot*, 92 A.2d 171, 173 (Pa. 1952)). In such situations, "the jury may draw an inference that it would be unfavorable to him." *Id.*

The trial court found that Pate "fail[ed] to demonstrate the Commonwealth exclusively maintained control of the phone." 1925(a) Op. at 8. It noted the police department kept the phone for 30 days pursuant to its policy, and that Pate did not ask for it back before its destruction. *Id.* It found the "Commonwealth was unaware" the phone had been destroyed. *Id.* The court concluded that a missing evidence instruction did not apply here and counsel was not ineffective for not seeking an inapplicable instruction.

- 11 -

The record supports the PCRA court's findings and it did not err in finding counsel was not ineffective for failing to request a missing evidence instruction. There is no evidence the prosecution controlled the phone, had any role in its destruction, or knew what evidence would be on it. Further, the phone was destroyed pursuant to pre-existing policy. We thus agree that the court would have properly denied a missing evidence instruction such that Pate cannot show prejudice.

Pate next claims counsel was ineffective for advising Pate not to testify at trial. He claims counsel informed Pate that he "should not testify based on the incorrect assumption by trial counsel that [Pate's] prior record would be introduced into the record and heard by members of the jury." Pate's Br. at 26. He claims counsel's advice was based on Pate's PWID conviction. *Id.* at 27.

"The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel." *Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000). "[T]o sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." **Id.**

In general, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion

the person acted in accordance with the character." Pa.R.Evid. 404(b)(1). However, "[f]or the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime . . . must be admitted if it involved dishonesty or false statement" and it is not more than ten years old. Pa.R.Evid. 609(a), (b). In **Nieves**, the Pennsylvania Supreme Court found counsel ineffective where he advised the defendant not to testify, informing the client that a non-*crimen falsi* prior conviction could be used to impeach his credibility. 746 A.2d at 1105.

The PCRA court found Pate "knowingly, voluntarily, and intelligently waived the right to testify on his own behalf." 1925(a) Op. at 9. It cited the colloquy at trial, in which Pate agreed he had discussed the decision with counsel, and made a "conscious, knowing, and intelligent decision to not provide any testimony" and noted he had a prior *crimen falsi* conviction. **Id** (quoting N.T., 5/25/10, at 175-77). It concluded:

> The [c]ourt apprised [Pate] of the Commonwealth's burden, and [Pate's] personal right to decide whether or not to testify. Trial [c]ounsel fully apprised [Pate] of the 'pros and cons' of testifying. Based upon the complete colloquy and the evidence of the thorough and vigorous representation by [t]rial [c]ounsel, we find [Pate] based his decision not to testify based upon a concern regarding his *crimen falsi* convictions and other concern[s] discussed with counsel.

**Id.** at 10-11.

The PCRA court's findings are supported by the record and it did not err in finding counsel was not ineffective in advising Pate not to testify. Although Pate claimed counsel informed him that his PWID conviction could be used on

cross-examination, trial counsel testified that he told Pate that the prior theft-related conviction could be used on cross-examination. The trial colloquy corroborates counsel's testimony. Counsel was not ineffective for advising Pate that a prior *crimen falsi* conviction could be used on cross-examination. **See Commonwealth v. Daniels**, 999 A.2d 590, 596 (Pa.Super. 2010) (finding counsel ineffectiveness claim frivolous where counsel advised defendant to not testify because of prior *crimen falsi* convictions).

Pate also claims that, because each the above-referenced claims has merit, we should conclude he is entitled to relief based on cumulative prejudice. Pate's Br. at 27. However, as discussed above, his claims do not have merit and "no number of failed claims may collectively warrant relief if they fail to do so individually." **Commonwealth v. Washington**, 927 A.2d 586, 617 (Pa. 2007). Therefore this claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/14/2019

- 14 -