J-S06005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES SANDERS | : | |
| | : | |
| Appellant | : | No. 994 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 3, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000944-2022

BEFORE: DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                 **FILED APRIL 12, 2024**

Appellant, James Sanders, appeals from the February 3, 2023 judgment of sentence of 9 to 23 months of incarceration entered in the Montgomery County Court of Common Pleas following his non-jury trial conviction of one count each of Endangering the Welfare of a Child ("EWOC") and one count of Simple Assault.[1] Appellant challenges certain evidentiary rulings and the sufficiency of the evidence. After careful review, we affirm.

The relevant facts and procedural history are as follows. Appellant and K.J. ("Victim") are parents to two minor children, A.S. and J.S.[2] On January 29, 2022, at approximately 10:55 AM, 911 dispatch in Stowe, Montgomery County, received a call from Victim reporting that Appellant, who was

---

[1] 18 Pa.C.S. §§ 4304(a)(1) and 2701(a)(1), respectively.

[2] In January 2022, A.S. was 13 years old and J.S. was seven years old.

reportedly intoxicated, was beating Victim and A.S. inside their home. Immediately prior to Victim's 911 call, 911 dispatch received a call from Victim's neighbor who was listening to the altercation taking place in Victim's home and narrating the events as they were occurring.

West Pottsgrove Township Police Officer Adam Zieske responded to the scene at 10:59 AM. When he arrived, he began to walk towards the residence, when Victim, who was seated in the front seat of her vehicle parked on the street, flagged him down. A.S. was seated in the vehicle with Victim; Appellant was inside the residence with J.S.[3]

Victim appeared "clearly upset" to Officer Zieske, but she was not crying.[4] "Talking quickly and in an excited manner[,]"[5] Victim told Officer Zieske that she had called 911 because she had had a physical altercation with Appellant. She reported that when Appellant woke up that morning he was intoxicated from the night before. She further reported that she and Appellant began to argue when Appellant demanded that Victim take him to the store, but she refused. Victim told Officer Zieske that Appellant grabbed her, head-butted her, and threw her around the bedroom. When Victim, holding J.S., tried to leave the residence, Appellant pushed them down the

_____

[3] As Officer Zieske approached the vehicle, he could hear Appellant yelling and he saw Appellant inside the residence crouched down behind the front screen door.

[4] N.T. Trial, 10/11/22, at 23.

[5] *Id.*

stairs. Victim reported that A.S. heard the altercation and yelled to Appellant "this is why nobody wants you here," at which point Appellant grabbed A.S. and began to throw her around the house.[6]

Officer Zieske noticed that A.S. was "visibly upset[,]" with a "flushed red" face and "swelling in the eye area."[7] A.S. was not crying, "but very clearly seemed to be someone who had just – was just crying, watery eyes, very upset."[8]

After speaking with Victim, Officer Zieske went to the residence to speak with Appellant, who was still inside with J.S., through the front screen door. Appellant refused to let Officer Zieske enter the residence and refused to exit the residence at Officer Zieske's request. Officer Zieske attempted to open the screen door, but it was locked. Appellant then closed and locked the deadbolt on the front door leaving Officer Zieske outside. Officer Zieske obtained a key to the door from Victim and entered the home. In order to enter, Officer Zieske had to rip open the screen door, which was locked, and damage molding on the door frame to push open the latched chain lock.

Once inside the residence, Officer Zieske could hear noises that sounded like a child. Officer Zieske directed Appellant to come down to the first floor of the residence numerous times; Appellant did not comply, instead remaining

---

[6] *Id.* at 28-29.

[7] *Id.* at 34-35.

[8] *Id.* at 28-29.

upstairs in a room with J.S. Over the course of a few minutes, Appellant slowly moved out of the room towards the stairwell, at which point Officer Zieske apprehended him. Appellant was "very angry, yelling, unorganized."[9] He smelled strongly of alcohol.

The Commonwealth charged Appellant with numerous offenses pertaining to Victim, A.S., and J.S. arising from these events.[10]

On October 11, 2022, Appellant proceeded to a bench trial at which the Commonwealth presented the testimony of Officer Zieske. Relevant to the instant appeal, during Officer Ziekse's testimony, Appellant objected on confrontation and hearsay grounds to Officer Zieske testifying regarding statements made to him by Victim. The Commonwealth argued that Victim's statements were admissible pursuant to the excited utterance exception to the hearsay exclusion rule. After considering, among other things, evidence that the Victim's 911 call ended at 10:59:17 AM and Officer Zieske arrived at Victim's residence and began speaking with her at 10:59 AM, and noting that it "clearly heard [Victim's] demeanor[,]" the court concluded that Victim's statements to Officer Zieske were "an appropriate exception under the excited utterance exception of the hearsay rule" and permitted Officer Zieske to testify to what Victim said to him.[11]

_____

[9] *Id.* at 33.

[10] The Commonwealth withdrew the charges pertaining to J.S. prior to trial.

[11] *Id.* at 27.

Also relevant to the instant appeal, the parties stipulated to the authenticity of the recorded 911 calls made by Victim; however, Appellant objected to the admission of the recording arguing that it was hearsay. The Commonwealth argued that the call from Victim was admissible because it satisfied the present sense impression and excited utterance exceptions to the hearsay exclusion rule. The trial court overruled Appellant's objections and admitted the recordings as evidence.

Following trial, the court convicted Appellant of one count of Simple Assault pertaining to Victim and one count of EWOC pertaining to A.S. The trial court deferred sentencing pending a pre-sentence investigation.

On February 3, 2023, the court sentenced Appellant to a term of 9 to 23 months of incarceration followed by one year of probation for the EWOC conviction and a consecutive one-year term of probation for the Simple Assault conviction.

Appellant filed a timely post-sentence motion alleging that the verdict was against the weight of the evidence. On April 12, 2023, the trial court denied the motion.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Did the lower court err in admitting the 911 call made by [Victim] because the testimony did not fall under the exceptions to the hearsay rule of excited utterance or present sense impression?

2. Did the lower court err in allowing Officer Zieske to testify as to statements made to him by [Victim] because they were testimonial, which is a violation of his right to confrontation, and the testimony did not fall under the excited utterance exception to the rule against hearsay?

3. Was there sufficient evidence presented at trial to sustain a guilty verdict for count seven of the information, [EWOC], because it was not proven beyond a reasonable doubt that the victim was under eighteen years old or that [] Appellant knowingly endangered her welfare?

Appellant's Brief at 3.

## A.

In his first two issues, Appellant challenges the trial court's admission of the Victim's recorded 911 call and her statements to Officer Zieske. It is axiomatic that the "admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Shelton*, 170 A.3d 549, 552 (Pa. Super. 2017) (citation omitted). We will not find an abuse of discretion unless the "ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Id.* (citation omitted). Where "the trial court indicated the reason for its decision to admit [the evidence], our scope of review is limited to an examination of the stated reason." *Commonwealth v. Minerd*, 753 A.2d 225, 229 (Pa. 2000).

## I.

Appellant first asserts that the trial court abused its discretion in admitting the Victim's recorded 911 call as evidence. Appellant's Brief at 15-19. He argues that Victim's statement in the 911 call was hearsay and should

not have been admitted as either an excited utterance or a present sense impression because the Commonwealth did not present any direct, independent evidence corroborating the occurrence of an assault. *Id.* at 18-19.

The Honorable Risa Vetri Ferman has authored a comprehensive, thorough, and well-reasoned opinion, including a discussion of relevant case law, to explain why the trial court, in its discretion, overruled Appellant's hearsay objection. *See* Trial Ct. Op., 6/15/23, at 6-9 (concluding that: (1) the 911 recording satisfied the excited utterance exception because Victim was the victim of a startling event and, while the event was ongoing and while under duress, and without time to reflect or consult with others, provided spontaneous statements describing the event; and (2) the 911 recording satisfied the present sense exception because the Victim gave the statement contemporaneously with the assault, with no time for reflection). After a thorough review of the relevant authority, record, the briefs of the parties, and the trial court's opinion, we discern no abuse of discretion. We, thus, affirm on the basis of the trial court's June 15, 2023 opinion.

## II.

Appellant next claims that the court abused its discretion in permitting Officer Zieske to testify regarding the statements Victim made to him. Appellant's Brief at 20-24. He argues that this testimony is hearsay that fails to satisfy the excited utterance exception because it was testimonial in nature and the Commonwealth presented no direct evidence to corroborate it. *Id.*

- 7 -

at 21-22.  He asserts that the "statement may have appeared to have been spontaneous, but it was obvious from the setting that [Victim] expected any information given to the officer to be accusatory" because Victim was sitting in her car while Appellant was inside the residence when Officer Zieske arrived. *Id.* at 22.

Bootstrapping his confrontation clause claim onto his hearsay argument, Appellant asserts that "the testimonial nature of [Victim's] statement required that she be present at the time of trial for confrontation and cross[-]examination[.]" *Id.* at 22-23.  He baldly claims that Victim failed to appear at trial because she understood "the accusatory nature of the statement she made to the police officer." *Id.* at 23.  He avers that the Victim "clearly knew" her statement would be "used by police against [Appellant], and her absence from trial precluded him from confronting her on the truthfulness of her statement and her purpose and motivation for making it." *Id.*

The Honorable Risa Vetri Ferman has authored a comprehensive, thorough, and well-reasoned opinion, including a discussion of relevant case law, to explain why the trial court, in its discretion, overruled Appellant's hearsay objection.  *See* Trial Ct. Op., 6/15/23, at 9-15 (concluding that: (1) Victim's statements to Officer Zieske were excited utterances because: (a) Victim initiated the statements; (b) they were spontaneous and voluntary and not in response to questioning; (c) Victim was clearly upset and talking in a quick and excited manner when making them; (d) Victim made the statements near in both place and time to the assault while Appellant was still yelling

- 8 -

inside the residence with J.S.; and (e) Victim's neighbor's 911 call corroborated the events of the assault; and (2) the admission of Victim's statements did not violate Appellant's right to confrontation because Victim made the spontaneous, unsolicited statements for the purpose of enabling police assistance to meet an ongoing emergency and not in response to any questions posed by the officer or for use at a later trial). After a thorough review of the relevant authority, the record, the briefs of the parties, and the trial court's opinion, we discern no abuse of discretion. We, thus, affirm on the basis of the trial court's June 15, 2023 opinion.

**B.**

In his final issue, Appellant challenges the sufficiency of the evidence in support of his EWOC conviction. Appellant's Brief at 25-27. In particular, Appellant claims that the Commonwealth failed to prove that he knowingly endangered A.S.'s welfare because it did not present evidence that she sustained any injuries or sought medical intervention. *Id.* at 27. In addition, he argues that the Commonwealth failed to present evidence of the nature of the "interpersonal relationships between [Victim and A.S.] and [Appellant]" and that "the lack of familiarity with any of the parties [prevented] any ability to evaluate or contrast any observations of A.S." *Id.* Appellant concludes that the Commonwealth presented insufficient evidence to establish that any

injuries resulted from the incident or that he placed A.S. in circumstances that threatened her welfare.[12]  ***Id.***

When reviewing the sufficiency of the evidence, we are governed by the following standard of review:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt.  As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.  Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Martin***, 297 A.3d 424, 434 (Pa. Super. 2023) (citation omitted).

Section 4304 of the Crimes Code defines EWOC, in relevant part, as follows: "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support."  18 Pa.C.S. § 4304(a)(1).

This Court has established a three-element test for EWOC: "(1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken

---

[12] Appellant has not presented any argument in support of the claim that the Commonwealth failed to prove that A.S. was under the age of 18 at the time of the incident.

action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare." **Commonwealth v. Pahel**, 689 A.2d 963, 964 (Pa. Super. 1997) (citation omitted).

"In reviewing [S]ection 4304, we must be aware that the legislature attempted to prohibit a broad range of conduct in order to safeguard the welfare and security of our children. Further, the common sense of the community should be considered when interpreting the language of the statute." **Commonwealth v. Trippett**, 932 A.2d 188, 194 (Pa. Super. 2007) (citations and quotations omitted).

> The statute does **not** require the actual infliction of physical injury. Nor does it state a requirement that the child or children be in imminent threat of physical harm. Rather it is the awareness by the accused that his violation of his duty of care, protection and support is practically certain to result in the endangerment to [the] children's welfare, which is proscribed by the statute.

**Commonwealth v. Wallace**, 817 A.2d 485, 491-92 (Pa. Super. 2002) (emphasis in original, quotation marks omitted), *abrogated on other grounds*, **Commonwealth v. Howard**, 257, A.3d 1217 (Pa. 2021).

Instantly, Officer Zieske's testimony established that Appellant placed his minor child, A.S., in a dangerous situation that threatened her physical and psychological welfare by knowingly "throw[ing A.S.] around the house"[13] when A.S. attempted to break up the altercation between Appellant and Victim. From this evidence, we conclude that it was reasonable for the trial court to find that "Appellant's conduct of grabbing A.S. and throwing A.S.

_____

[13] N.T. Trial at 29.

- 11 -

around while in the midst of an assault upon [Victim] demonstrates his awareness that he placed the minor child in a dangerous situation that threatened A.S.'s physical or psychological welfare." Trial Ct. Op. at 17. Accordingly, Appellant's claim that the Commonwealth failed to prove each of the elements of the offense of EWOC lacks merit.

**C.**

In conclusion, we find both of Appellant's evidentiary challenges and his sufficiency of the evidence claim meritless. We, thus, affirm Appellant's judgment of sentence.

Judgment of sentence affirmed. Appellant is directed to attach a copy of the trial court's June 15, 2023 opinion to any future filings.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  4/12/2024

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : 
                                      :          **CP-46-CR-944-2022**

           vs.                       :

JAMES SANDERS                      :          **994 EDA 2023**

## OPINION

**FERMAN, J.**                                            **June 15, 2023**

### Factual and Procedural History

Appellant, James Sanders (hereinafter "Appellant") appeals from the judgement of sentence imposed on February 3, 2023, which became final on March 12, 2023 when this court denied his post-sentence motion.

This case stems from a physical domestic incident that occurred on January 29, 2022 just before 11:00 am at a residence located at 313 Lemon Street in Stowe, West Pottsgrove Township, Montgomery County. (N.T. Bench Trial 10/11/22 at 13-14). At approximately 10:55 a.m. 911 dispatch received a call from K.J., one of the victims in this case (hereinafter "K.J."). K.J. and appellant are the parents of two (2) minor children: A.S., age thirteen (13) at the time of the incident (hereinafter "minor child A.S."); and J.S., age seven (7) at the time of the incident (hereinafter "minor child J.S."). K.J. stated to the 911 operator that appellant was beating her up, and beating up their minor child A.S. inside the residence. K.J. also stated that appellant was intoxicated. *Id* at 17-18. Just before K.J.'s 911 call, at approximately 10:54 am, 911 dispatch

received a call from a neighbor who was listening to the ongoing domestic altercation happening at 313 Lemon Street. The neighbor was narrating what was occurring as she heard it.

Officer Adam Zieske of the West Pottsgrove Township Police Department responded to the scene. He arrived at 313 Lemon Street at 10:59 am, approximately three (3) or four (4) minutes after he was dispatched. *Id.* at 22, 25-27. When he arrived he began to walk toward the residence, but was flagged down by K.J. By that time, K.J. was seated in the front seat of her vehicle which was parked on the street. *Id.* at 22. Minor child A.S. was seated in the back seat of the vehicle. *Id.* at 23. Appellant was inside the residence with minor child J.S. Officer Zieske approached the vehicle.

Officer Zieske was able to see appellant inside the residence because the front door was open (there was a screen door that was closed). *Id.* at 22 Officer Zieske observed appellant at the door, crouched down and yelling through the partition of the door. *Id.* K.J. told Officer Zieske that she had just called 911. Officer Zieske observed that K.J. was "clearly upset, but not crying. Talking quickly in an excited manner." *Id.* at 22-23. She told Officer Zieske that she was in a physical altercation with appellant, who is the father of her two children, inside the residence at 313 Lemon Street. K.J. stated that when appellant woke up, he was intoxicated from the night before. *Id.* at 28. He demanded that she take him to the store, and she refused. *Id.* An argument broke out and it escalated to appellant grabbing K.J., head-butting her in the area of her forehead and throwing her around the bedroom. K.J. attempted to leave the residence

while holding minor child J.S., and appellant pushed K.J. down the stairwell. *Id.* at 28. K.J. stated that minor child A.S. heard the altercation and came to where she and appellant were located. Minor child A.S. yelled, "this is why nobody wants you here," at which point, appellant grabbed minor child A.S. and "began to throw [minor child A.S.] around the house." *Id.* at 28-29.

Officer Zieske observed minor child A.S.'s demeanor to be "visibly upset. Not engaged in crying, but very clearly seemed to be someone who had just – was just crying, watery eyes, very upset." *Id.* Officer Zieske did not observe injuries on K.J. Officer observed that minor child A.S.'s face was flushed red and had swelling in the eye area. *Id.* at 34-35.

After speaking with K.J., Officer Zieske went to the residence to speak with appellant. Minor child J.S. was inside the residence with appellant and his condition was unknown. *Id.* at 30. Officer Zieske began speaking with appellant through the front screen door (appellant inside and Officer Zieske outside). Appellant would not allow Officer Zieske to enter the home to speak with him. Officer Zieske then asked appellant to step outside, but appellant refused. At that point, Officer Zieske attempted to open the screen door to gain entry into the home, but the screen door was locked. Appellant then closed and locked the front door to the residence (Officer Zieske heard the deadbolt lock) leaving Officer Zieske outside. *Id.* at 30-31.

Officer Zieske obtained a key to the residence from K.J. and gained entry into the home. *Id.* at 31. He had to rip open the screen door, which was locked, and ruin molding on the door frame to push open the latched chain lock. *Id.*

Once inside, Officer Zieske could hear appellant upstairs with "what sounded like a child." *Id* at 31. Officer Zieske directed appellant to come to the stairwell and come downstairs numerous times. *Id.* at 31-32. Appellant did not comply; he remained with minor child J.S. in a room upstairs. Over the course of a few minutes, appellant slowly moved out of the room towards the stairwell, at which point Officer Zieske apprehended him. *Id.* at 31-32. Appellant's demeanor was "very angry, yelling, unorganized." *Id.* at 33. He smelled heavily of alcoholic drinks. *Id.*

On or about January 29, 2022, appellant was charged with five crimes pertaining to K.J. and minor child A.S.: two counts of endangering the welfare of a child,[1] two counts of simple assault,[2] and one count of recklessly endangering another person.[3] Appellant was also charged with three crimes pertaining to minor child J.S., but the Commonwealth withdrew those charges prior to trial.[4]

On October 11, 2022, following a bench trial, this court found appellant guilty of the following crimes: one count of simple assault (for K.J.)[5] and one count of endangering the welfare of a child (M1) (for minor child A.S.).[6] The court found appellant not guilty of the following crimes: endangering the welfare of a child (F3) (for minor child A.S.),[7] simple assault (for minor child A.S.),[8] and

---

[1] 18 Pa.C.S.A. § 4304(a)(1). One count (count 1) was charged as F3 and one count (count 7) was charged as M1. Both counts were for minor child A.S.

[2] 18 Pa.C.S.A. § 2701(a)(1) (M2). One count (count 3) for K.J. and one count (count 4) for minor child A.S.

[3] 18 Pa.C.S.A. § 2705 (M2) for K.J.

[4] Count 2, endangering the welfare of a child, 18 Pa.C.S.A. § 4304(a)(1) (F3); count 6, recklessly endangering another person, 18 Pa.C.S.A. § 2705 (M2); count 8, endangering the welfare of a child, 18 Pa.C.S.A. § 4304(a)(1) (M1).

[5] 18 Pa.C.S.A. § 2701(a)(1) (M2)

[6] 18 Pa.C.S.A. § 4304(a)(1) (M1).

[7] 18 Pa.C.S.A. § 4304(a)(1) (F3).

[8] 18 Pa.C.S.A. § 2701(a)(1) (M2).

recklessly endangering another person (for K.J.)[9] Sentencing was deferred pending a presentence investigation and report ("PSI").

On February 3, 2023, this court held a sentencing hearing and sentenced appellant to the following: for the crime of endangering the welfare of a child, a term of imprisonment for not less than nine (9) months nor more than twenty-three (23) months, a one (1) year term of probation consecutive to end of parole, plus the costs of prosecution; for the crime of simple assault, a consecutive one (1) year term of probation. Appellant was made eligible for work release after six (6) months. The jail sentence imposed for endangering the welfare of a child was in the mitigated range of the guidelines; the probation sentence imposed for the crime of simple assault was below the mitigated range of the guidelines.

On February 13, 2023, appellant filed a timely post sentence motion for a new trial alleging that the verdict was against the weight of the evidence. On April 12, 2023, the court denied the post sentence motion. On April 19, 2023, appellant filed a timely Notice of Appeal to the Superior Court of Pennsylvania, appealing the judgement of sentence imposed on February 3, 2023. On April 26, 2023, this court ordered Appellant to file a concise statement of matters complained of on appeal, which he timely filed on May 17, 2023. The undersigned now files her 1925(a) Opinion.

## Issues

In this appeal Appellant raises the following issues in his concise statement verbatim:

---

[9] 18 Pa.C.S.A. § 2705 (M2).

1. The trial court erred in admitting the 911 call made by [K.J.] because the testimony did not fall under the exceptions to the rule against hearsay of excited utterance or present sense impression.

2. The trial court erred in allowing Officer Zieske to testify about statements made to him by [K.J.] because they were testimonial, which is a violation of his right to confrontation, and the testimony did not fall under the excited utterance exception to the rule against hearsay.

3. There was insufficient evidence presented at trial to sustain the guilty verdict for count seven of the information, endangering the welfare of a child, because it was not proven beyond a reasonable doubt that the victim was under eighteen years old or that the Appellant knowingly endangered her welfare."

## Discussion

The trial court exercised proper discretion in admitting the 911 call made by K.J. Prior to the start of trial, counsel stipulated to the authenticity of the 911 call. The stipulation was: if the 911 respondent was called to testify, they would testify that they received a call the morning of January 29, 2022 at 10:55 am from K.J. (N.T. Bench Trial 10/11/22 at 10-11, 14). The 911 call made by K.J. was admitted into evidence pursuant to the excited utterance exception to the hearsay rule and the present sense impression exception to the hearsay rule.

The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. *Commonwealth v. Cunningham*, 805 A.2d 566, 572 (Pa. Super. 2002) (citing *Commonwealth v. Thomas*, 552 Pa. 621, 717 A.2d 468, 477 (1998), *cert. denied*, 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999)). Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *Pa.R.E.*

***801(c).*** Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court or by statute. ***See Pa.R.E. 802.***

Rule 803(2) of the Pennsylvania Rules of Evidence permits the admission of an excited utterance as an exception to the general rule that hearsay evidence is inadmissible. The Rule defines an excited utterance as: "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." ***Pa.R.E. 803(2).*** For a statement to be considered an excited utterance, it must be made spontaneously and without opportunity for reflection:

> [A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.... Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective though processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event. *Commonwealth v. Stokes,* 532 Pa. 242, 615 A.2d 704, 712 (1992), quoting *Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371, 373–74 (1979).
>
> ***Commonwealth v. Gray,*** 867 A.2d 560, 570–71 (Pa. Super. 2005) (citing *Commonwealth v. Stallworth,* 566 Pa. 349, 781 A.2d 110, 119–120 (2001))

"In assessing a statement offered as an excited utterance, the court must consider, among other things whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so." ***Gray, supra*** (citing ***Commonwealth v. Carmody,*** 799 A.2d 143, 147

(Pa.Super.2002)). Pennsylvania Courts have not established a bright line rule regarding the amount of time that may elapse between the declarant's experience and her statement. *Id.* Rather, "[t]he crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." *Id.* (quotations omitted). "It is the spontaneity of ... an excited utterance [that] is the source of reliability and the touchstone of admissibility." *Id.* (quotations omitted).

The present sense impression exception to the hearsay rule is addressed in Rule 803(1) of the Pennsylvania Rules of Evidenc, and provides:

> The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (1) Present Sense Impression. A statement describing or explaining an event or condition made while or immediately after the declarant perceived it.

The trustworthiness of these declarations does not depend upon whether the declarant is excited or is emotionally affected by the event. ***Comment, Pa.R.E. 803(1).*** Rather, the trustworthiness of the statements depends upon the timing of the statement. *Id.* "The observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." ***Gray, supra.*** (citing ***Cunningham,*** 805 A.2d at 573).

In this case, the court exercised proper discretion in admitting the 911 call made by K.J. pursuant to the excited utterance exception to the hearsay rule. The evidence in this case reveals that K.J., the declarant, was the victim of a startling event, namely, a physical assault perpetrated upon her by her

children's father inside the residence while their children were there. She stated in the 911 call that appellant was beating her up and beating up minor child A.S. (N.T. Bench Trial 10/11/22 at 17-18). While this assault is ongoing, K.J. called 911 and provided spontaneous statements to the 911 respondent while shouting and describing the assault as it is happening. K.J. made these statements under distress and during the excitement of the assault. The statements were contemporaneous with the ongoing assault, spontaneous and subject to overpowering emotion. K.J. had no time to reflect or consult with others before making the statements. Accordingly, the court exercised proper discretion in admitting K.J.'s 911 call as an excited utterance.

In addition, the 911 call qualifies as a present sense impression. K.J.'s statement was given contemporaneous with the assault, thereby offering no chance of reflection. The statement is given at the time the assault is occurring and is describing the events as they occur. K.J. has personal knowledge of what she is describing because the assault is occurring upon her. Accordingly, the court exercised proper discretion by admitting K.J.'s 911 call as a present sense impression.

Appellant's second claim of error is that the trial court erred in allowing Officer Zieske to testify about the statements made to him by K.J. because they were testimonial, which is a violation of the defendant's right to confrontation. Appellant also claims that the testimony (K.J.'s statements to Officer Zieske) did not fall under the excited utterance exception to the rule against hearsay. The court will address the excited utterance exception first.

The law pertaining to the excited utterance exception is set forth above. In this case, Officer Zieske responded to the 911 call made by K.J. When he arrived on location, he was immediately flagged down by K.J., who stated to the officer that she was the one who called 911. K.J. was inside her vehicle, which was parked on the street outside the residence. Minor child A.S. was in the backseat. Appellant was inside the house behind a screen door, yelling through the screen partition of the door. Minor child J.S. was inside the residence. The statements made to Officer Zieske were initiated by K.J. They were spontaneous and voluntary and not in response to any questions by the officer. She stated that she was in a physical altercation with appellant, who is the father of her children. (N.T. Bench Trial 10/11/22 at 27-28). She stated that appellant and minor child J.S. were inside the residence. *Id.* at 28. She told Officer Zieske that appellant woke up intoxicated from the night before, demanding that she take him to the store, which she did not do. *Id.* An argument broke out, which escalated into appellant grabbing K.J. and throwing her around the bedroom. She stated appellant "head-butted her in the area of her forehead." She also stated that she attempted to leave the residence while holding minor child J.S., and appellant pushed her down the stairwell. She went on to say that minor child A.S. heard the altercation from where she was in the house and came to where K.J. and appellant were located. She stated that minor child A.S. yelled: "this is why nobody wants you here," at which point, appellant "turned his attention to [minor child A.S.]" and "grabbed [minor child A.S. and began to throw her around the house." *Id.* at 28-29.

When Officer Zieske encountered K.J., she was clearly upset and talking in a quick and excited matter. K.J. and minor child A.S. had just endured a physical assault by appellant. While the two were seated in the vehicle, appellant continued to yell from inside the residence. Minor child J.S. was still inside the residence with appellant.

Officer Zieske testified that K.J. made the statements near in both time and place to the assault. The 911 call came in at 10:55 and thirty (30) seconds. The 911 call ended at 10:59 and seventeen (17) seconds. Officer Zieske is on the scene by 10:59. (N.T. Bench Trial 10/11/22 at 25-27.). The statements were made to Officer Zieske immediately following the 911 call. K.J. was just outside the residence where the incident occurred, in a vehicle parked on the street. Appellant was yelling through the screen door at the entry to the residence while minor child J.S. was still inside. The Commonwealth presented evidence of a 911 call from a neighbor who called 911 as she was listening to the ongoing domestic altercation from two doors over to corroborate that appellant committed the assault. When K.J. made these unsolicited statements to Officer Zieske, she had just participated in a startling and traumatic event. Officer Zieske arrived at the scene at the same time that K.J's 911 call ended. K.J. had no time to reflect on the incident. The court exercised proper discretion in admitting K.J.'s spontaneous statements to Officer Zieske pursuant to the excited utterance exception to the hearsay rule.

The statement made by K.J. to Officer Zieske was not testimonial. In *Commonwealth v. Gray,* 867 A.2d at 572–74, the Superior Court explained the law in Pennsylvania related to the confrontation clause. The Court stated:

> [In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)] the Supreme Court held that, when the prosecution seeks to introduce a "testimonial" out-of-court statement into evidence against a criminal defendant, the Confrontation Clause of the Sixth Amendment requires: (1) that the witness who made the statement is unavailable; and (2) that the defendant had a prior opportunity to cross-examine the witness.

The Confrontation Clause only seeks to protect a defendant from *testimonial* out-of-court statements. The United States Supreme Court did not define "testimonial," but offered the following guidance:

> Various formulations of this core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

**Gray, supra,** (citing **Crawford**, 541 U.S. at 51–52).

To further clarify the distinction between testimonial and nontestimonial statements, the Court in *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), addressed two types of statements to police and held that whether a statement is testimonial depends on its "primary purpose:"

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary

purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

***Commonwealth v. Yohe***, 621 Pa. 527, 544–45, 79 A.3d 520, 531 (2013) (citing ***Davis***, 547 U.S. at 822)

In this case, the record reveals that K.J. made spontaneous, unsolicited statements to Officer Zieske when he arrived at the scene where the assault occurred immediately following the assault. K.J.'s statements described the assault that occurred just seconds prior, and qualified as excited utterances. K.J. ended her 911 call reporting the assault around the same time that Officer Zieske arrived on scene. When Officer Zieske arrived, he headed toward the residence, but K.J. flagged him down. K.J. initiated the statements to Officer Zieske and they were not in response to any questions posed by the officer. The primary purpose of the statements was to obtain police assistance for herself and her children to meet an ongoing emergency.

These statements do not qualify as testimonial pursuant to *Crawford*. First, they do not constitute "ex parte in-court testimony or its functional equivalent." (i.e. "affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"). K.J.'s statements were not taken from an affidavit or prior testimony and were not the product of a custodial examination. In considering whether K.J. would have reasonably expected her statements to be used prosecutorially, the *Gray* court

determined that an unsolicited excited utterance to police that is made to obtain assistance during the commission of a crime would not constitute a statement made in contemplation of prosecution. *Gray*, 867 A.2d 560, 577. In such a situation, the declarant is not subject to police interrogation and is not influenced by reason or deliberation. *Id.* The declarant volunteers this information in an effort to remedy a perceived emergency, not to create a record against another for use in a future prosecution. *Id.* This reasoning applies to this case because K.J. made unsolicited excited utterances to the police immediately following an assault upon herself and her child (which assault led her to call 911) while the perpetrator was still yelling, inside the residence, with her other child inside. The court finds that K.J. did not make the statements with the contemplation that they would be used in a future prosecution. Accordingly, these statements do not fall under the *"ex parte* in-court testimony or its functional equivalent" classification of testimonial statements articulated in *Crawford.*

Next, K.J.'s statements were not extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony or confessions. Finally, K.J.'s statements to police would not qualify under the third classification of testimonial statements, namely, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford,* 541 U.S. at 52. 124 S.Ct. at 1364. When K.J. made her statements to police, the officer had not asked her a question; K.J. flagged Officer Zieske down as he was

heading toward the residence. Since K.J.'s statements to police did not arise during the context of a formal, structured police interrogation, an objective witness would not conclude that the statements would be available for use at a later trial. *Gray*, 867 A.2d at 577. Rather, an objective witness would more likely conclude that the officers would utilize this information to intervene in the alleged assault and would later obtain a more formal statement from the witness, which they did. (N.T. Bench Trial 10/11/22 at 35). Accordingly, K.J.'s statements do not qualify as testimonial and Appellant's Sixth Amendment right of confrontation was not violated by their admission.

Last, appellant claims that there was insufficient evidence presented at trial to sustain the guilty verdict for the charge of endangering the welfare of a child because it was not proven beyond a reasonable doubt that A.S. was under the age of 18 or that appellant knowingly endangered A.S.'s welfare.

The standard jury instruction for the crime of endangering the welfare of a child sets for the four (4) elements the Commonwealth must prove: (1) that the defendant endangered the welfare of the child by violating a duty of care, protection or support; (2) that the defendant endangered the welfare of the child knowingly;[10] (3) that the defendant was at the time a parent, guardian, person supervising the welfare of the child under the age of 18, or a person that employs or supervises such a person; (4) the child was under the age of 18 at the time of the endangering.

---

[10] A person's conduct is knowing when he or she is aware that it is practically certain that his or her conduct will cause a particular result.

For the element pertaining to the age of the child, counsel stipulated at trial that [appellant] is the biological father of A.S. and that A.S. is currently age 14. (N.T. Bench Trial 10/11/22 at 10-11). If minor child A.S. was age 14 at the time of the trial, she was necessarily under the age of 18 at the time of the incident, which was ten (10) months earlier. Therefore, the Commonwealth proved this element beyond a reasonable doubt. Pertaining to the element that appellant knowingly endangered the welfare of A.S. "Endanger" is defined, *inter alia,* as "to bring into danger or peril," or "to create a dangerous situation." *https://www.merriam-webster.com/dictionary/endanger.* Thus, the material element of endangering the welfare of a child is the creation of a perilous or dangerous situation. ***Commonwealth v. Howard,*** 257 A.3d 1217, 1227 (Pa. 2021).

Pennsylvania courts have employed a three-prong standard to determine whether the Commonwealth's evidence is sufficient to prove the intent element: 1) the accused must be aware of his or her duty to protect the child; 2) the accused must be aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and 3) the accused either must have failed to act or must have taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare. ***Commonwealth v. Retkofsky,*** 860 A.2d 1098, 1099–100 (Pa. Super. 2004)

In this case, appellant is A.S.'s father and has a duty to protect A.S. as his minor child. Next, appellant knowingly placed his minor child, A.S., in a dangerous situation that threatened A.S.'s physical and/or psychological

welfare. He knowingly "threw [A.S.] around" when A.S. came to break up the altercation between appellant and K.J. A.S. was not just caught in the crossfire of appellant's assault upon K.J. Rather, A.S. consciously interjected in order to break up the ongoing altercation, while stating "this is why nobody wants you here." At this point appellant "turned his attention to [A.S.]...grabbed [A.S.] and began to throw [A.S.] around the house." (N.T. Bench Trial 10/11/22 at 29). This shows that appellant acted knowingly. As A.S.'s father, he knew that he has a duty to protect the minor child. Appellant's conduct of grabbing A.S. and throwing A.S. around while in the midst of an assault upon K.J. demonstrates his awareness that he placed the minor child in a dangerous situation that threatened A.S.'s physical or psychological welfare. Based on the foregoing, the Commonwealth presented sufficient evidence to prove the elements of endangering the welfare of a child.

## Conclusion

Based on the foregoing, the judgment of sentence entered on February 3, 2023 should be AFFIRMED.

BY THE COURT:

RISA VETRI FERMAN, J.

Copies of Opinion sent on 6|15|23 to:
Robert M. Falin, Esquire, Chief, Appeals Division, District Attorney's Office
Emily Phou, District Attorney's Office
James Berardinelli, Esquire and Jeffrey Mattus, Esquire, Counsel for Appellant
Court Administration – Criminal Division